Docket No. 103796.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RAYMOND HARRIS, Appellee.

*Opinion filed March 20, 2008.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Defendant, Raymond E. Harris, was a passenger in a car that was stopped by a police officer after the driver made an illegal left turn. In the course of the traffic stop, the officer asked defendant for his identification and he complied with the request. The officer conducted a computer search that revealed an outstanding warrant and placed defendant under arrest. The search incident to arrest revealed cocaine and drug paraphernalia in the pocket of defendant's jacket. Defendant's motion to suppress evidence was denied.

After a jury trial in the circuit court of Will County, defendant was convicted of unlawful possession of a controlled substance. 720 ILCS 570/402(c) (West 1996). The appellate court reversed on the basis that defendant's compliance with the officer's request for

identification was not voluntary; therefore, any evidence discovered as a result should have been suppressed. *People v. Harris*, 325 Ill. App. 3d 262, 266 (2001).

This court allowed the State's petition for leave to appeal and affirmed the appellate court's judgment, although on different grounds. *People v. Harris* (*Harris I*), 207 Ill. 2d 515 (2003). On the same day, this court filed its opinion in *People v. Caballes* (*Caballes I*), 207 Ill. 2d 504 (2003).

The United States Supreme Court granted the State's petitions for *certiorari* in both *Harris* and *Caballes*. In *Caballes*, the Court filed an opinion and vacated this court's judgment, remanding the matter for further proceedings. *Illinois v. Caballes*, 543 U.S. 405, 160 L. Ed. 2d 842, 125 S. Ct. 834 (2005). In *Harris*, the Court summarily vacated this court's judgment and remanded for reconsideration in light of its decision in *Caballes*. *Illinois v. Harris*, 543 U.S. 1135, 161 L. Ed. 2d 94, 125 S. Ct. 1292 (2005).

This court subsequently filed a second opinion in *People v. Caballes* (*Caballes II*), 221 Ill. 2d 282 (2006). We then remanded the present case to the appellate court for reconsideration in light of *Illinois v. Caballes* and this court's opinion in *Caballes II*.

On remand, the appellate court stood by its earlier judgment. No. 3–00–0190 (unpublished order under Supreme Court Rule 23). We have again allowed the State's petition for leave to appeal under Rules 315 and 604(a)(2) (210 Ill. 2d Rs. 315, 604(a)(2)).


BACKGROUND

On the afternoon of September 27, 1997, a Will County sheriff's deputy observed a 1991 black Firebird make an illegal left turn. He stopped the car and asked the driver for his license and proof of insurance. The driver stated that he did not have his license with him, but gave the officer a name and date of birth. The officer transmitted the information to county dispatch, which determined that the name and birthdate did not correspond to a valid license. When confronted with this information, the driver admitted his true identity and that his license was either suspended or revoked.

At the hearing on defendant's motion to quash arrest and suppress evidence, the officer testified that when he asked defendant for

identification, it was in keeping with his usual practice when arresting the driver of a vehicle. If a passenger in the vehicle produces a valid driver's license, he allows the passenger to drive the vehicle away, thus avoiding the expense and inconvenience of having the vehicle towed. He further testified that when he asked to see defendant's identification, he did not suspect him of any wrongdoing. He did not, however, ask defendant if he had a valid driver's license or if he wanted to take responsibility for driving the car away from the scene.

Defendant complied with the officer's request, handing him a state identification card. The officer returned to his squad car and conducted a computerized search of both the driver's and the defendant's information. As a result of this search, he discovered an outstanding arrest warrant for defendant for failure to appear in court.

The officer placed defendant under arrest. A search incident to arrest revealed a pea-sized rock of cocaine in defendant's jacket pocket, along with a copper scrubbing pad typically used as a device for heating and smoking cocaine. A search of the car revealed another pea-sized rock of cocaine. The driver was also placed under arrest and the car was impounded.

At trial, the officer again testified that he requested identification from the defendant to determine whether he was legally able to drive the car so that it would not have to be towed away. He also acknowledged that his written report stated that the car was legally parked. Nevertheless, he testified that in the absence of a passenger eligible to drive the vehicle, he would have arranged for the car to be towed and done an inventory search, which would have revealed the cocaine in the backseat. The officer further stated that he asked the defendant for identification after the driver admitted that his license was suspended or revoked, but before he verified this fact. Thus, the second time he returned to his squad car, it was for the purpose of running checks on both occupants of the car.

The jury found defendant guilty of unlawful possession of a controlled substance. Defendant filed a posttrial motion in which he argued that the evidence was not sufficient to prove him guilty beyond a reasonable doubt. The posttrial motion did not, however, reassert his earlier argument that the evidence found in his pocket should have been suppressed. The trial court denied the posttrial motion and

sentenced defendant to 28 days in jail, with credit for the 28 days previously served, a term of 24 months' probation, and various fines.

The State argued on appeal that defendant forfeited the suppression issue because he failed to raise it in his posttrial motion. The appellate court acknowledged defendant's forfeiture of the issue, but stated that it deemed the issue "sufficiently significant to merit our review, despite defendant's failure to properly preserve it below." *Harris*, 325 Ill. App. 3d at 265. On the merits, the appellate court found that defendant's motion to suppress should have been granted. *Harris*, 325 Ill. App. 3d at 267.

This court granted the State's petition for leave to appeal. As the appellant before this court, however, the State did not argue that issues related to the suppression motion had been forfeited by defendant. This court addressed the issues on the merits, with no discussion of forfeiture.

As noted above, this court's opinion in *Harris I* was subsequently vacated by the United States Supreme Court. On remand for reconsideration, the appellate court concluded that the judgments of the Supreme Court in *Caballes* and this court in *Caballes II* have no bearing on the present case. No. 3–00–0190 (*Harris II*) (unpublished order under Supreme Court Rule 23).

ISSUES

The parties disagree as to the issue or issues properly before this court. The State, as appellant, argues that defendant has forfeited review of all issues related to the trial court's ruling on his motion to suppress by failing to raise such issues in his posttrial motion. Forfeiture aside, the State argues that the sole question for this court is whether, in the absence of reasonable suspicion, the fourth amendment permits a police officer to conduct a warrant check regarding a passenger during a lawful traffic stop. In *Harris I*, a majority of this court held that such a warrant check was outside the scope of the traffic stop and, therefore, unreasonable. *Harris I*, 207 Ill. 2d at 530. The dissenting justices would have found the warrant check permissible. *Harris I*, 207 Ill. 2d at 537-38 (Fitzgerald, J., dissenting, joined by Thomas and Garman, JJ.). As the judgment in *Harris I* has

-4-

been vacated and the cause remanded for reconsideration, this question remains unanswered by this court.

Defendant argues that the proper issue for our consideration is whether the officer's request for identification violated his fourth amendment rights because his compliance was not voluntary. This is the issue addressed by the appellate court in its published opinion in *Harris I*, 325 Ill. App. 3d at 267, and its order in *Harris II*, No. 3–00–0190 (unpublished order under Supreme Court Rule 23).

We first address the forfeiture question and conclude that it is necessary to reach the merits of both issues. Logic would seem to dictate that the issues be decided in chronological order, determining whether the police officer's request for identification violated defendant's fourth amendment rights before considering whether the warrant check was proper. Nevertheless, we treat the warrant check issue first because the State, as appellant, argues only this issue. Only if the State's position regarding the warrant check is correct is it necessary to revisit the other issue, because the warrant check would not have been possible if the officer had not first obtained the defendant's identification information. See *Harris I*, 207 Ill. 2d at 537 (Fitzgerald, J., dissenting, joined by Thomas and Garman, JJ.) (noting that "where the identity of the passenger is unknown, the officer cannot run a check for outstanding warrants unless the passenger assents to the officer's request for identification").

### FORFEITURE

To preserve an issue for appeal, both a timely objection at trial and a written posttrial motion raising the issue are required. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). This long-standing rule is consistent with section 116–1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116–1 (West 2006)) (motion for a new trial), and serves the purpose of allowing the trial court " 'the opportunity to grant a new trial, if warranted.' " *Enoch*, 122 Ill. 2d at 186, quoting *People v. Caballero*, 102 Ill. 2d 23, 31-32 (1984).

Thus, before reaching the merits of either issue, we must address the State's claim that because defendant failed to raise the suppression issue in his posttrial motion, he forfeited consideration of the

underlying issues–the request for identification and the warrant check–on appeal.

The present case presents an unusual set of circumstances. In *Harris I*, the State, as the appellant before this court, failed to argue that the appellate court erred by not giving effect to defendant's forfeiture, thus forfeiting the forfeiture argument. See *People v. Williams*, 193 Ill. 2d 306, 347 (2000) (noting that the forfeiture rule is applicable to the State as well as to a defendant in a criminal proceeding). Instead, the State prevailed on the merits of the request for identification issue, but unsuccessfully argued the merits of the warrant-check issue. The State then obtained a writ of *certiorari* and was prepared to argue the merits of the warrant-check issue to the United States Supreme Court. The Supreme Court vacated this court's judgment in *Harris I* and remanded for reconsideration in light of its decision in *Caballes*. The appellate court did not engage in such reconsideration.

We conclude that it falls to us to follow the Supreme Court's directive to reconsider this case in light of *Caballes*, notwithstanding earlier forfeitures by both parties. We, therefore, address the issues on the merits.

STANDARD OF REVIEW

When reviewing a trial court's ruling on a motion to suppress evidence, we apply the two-part standard of review adopted by the Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996). Under this standard, a trial court's findings of historical fact are reviewed for clear error, giving due weight to any inferences drawn from those facts by the fact finder. *Ornelas*, 517 U.S. at 699, 134 L. Ed. 2d at 920, 116 S. Ct. at 1663. Thus, this court has held that a reviewing court may reject the trial court's findings of fact only if they are against the manifest weight of the evidence. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001).

A reviewing court, however, may assess the established facts in relation to the issues and may draw its own conclusions when deciding what relief, if any, should be granted. *People v. Pitman*, 211 Ill. 2d 502, 512 (2004). Accordingly, we review *de novo* the trial court's

-6-

ultimate ruling as to whether suppression is warranted. *Ornelas*, 517 U.S. at 699, 134 L. Ed. 2d at 920, 116 S. Ct. at 1663; *Pitman*, 211 Ill. 2d at 512; *Sorenson*, 196 Ill. 2d at 431.

## ANALYSIS

This court has previously observed that a passenger is seized for fourth amendment purposes when the vehicle in which he is riding is subjected to a traffic stop. *People v. Bunch*, 207 Ill. 2d 7, 13 (2003). The Supreme Court has made similar observations. See, *e.g.*, *Berkemer v. McCarty*, 468 U.S. 420, 436-37, 82 L. Ed. 2d 317, 332-33, 104 S. Ct. 3138, 3148 (1984) (" 'stopping an automobile and detaining its occupants constitute a "seizure" ' " for fourth amendment purposes, " 'even though the purpose of the stop is limited and the resulting detention quite brief' "), quoting *Delaware v. Prouse*, 440 U.S. 648, 653, 59 L. Ed. 2d 660, 667, 99 S. Ct. 1391, 1396 (1979).

Subsequent to this court's decision in *Harris I*, the Supreme Court decided the case of *Brendlin v. California*, in which it definitively answered the question whether a passenger of a stopped vehicle is seized for fourth amendment purposes. *Brendlin v. California*, 551 U.S. ___, ___, 168 L. Ed. 2d 132, 138-39, 127 S. Ct. 2400, 2406 (2007) (acknowledging that the Court has said "over and over in *dicta* that during a traffic stop an officer seizes everyone in the vehicle"). Applying the rule of *Florida v. Bostick*, 501 U.S. 429, 115 L. Ed. 2d 389, 111 S. Ct. 2382 (1991), the Court concluded in *Brendlin* that when a vehicle is subject to a traffic stop, "any reasonable passenger" would understand "the police officers to be exercising control to the point that no one in the car was free to depart without police permission." *Brendlin*, 551 U.S. at ___, 168 L. Ed. 2d at 139, 127 S. Ct. at 2406-07. Thus, the Court held, not only the driver but also any passengers are seized for fourth amendment purposes when the vehicle in which they are traveling is subjected to a traffic stop. The Court noted that this conclusion "comports with the views of all nine Federal Courts of Appeals, and nearly every state court, to have ruled on the question." *Brendlin*, 551 U.S. at ___, 168 L. Ed. 2d at 140, 127 S. Ct. at 2407-08, citing, *inter alia*, *Bunch*, 207 Ill. 2d at 13. The Court then rejected the State's argument that a seized passenger may not bring a fourth amendment challenge to the legality of the stop itself. *Brendlin*, 551 U.S. at ___, 168 L. Ed. 2d at 140, 127 S. Ct. at

2408. Because the State conceded that the police had no adequate justification for the stop of the car in which Brendlin was riding, and because Brendlin was seized "from the moment [the] car came to a halt on the side of the road," it was error for the state court to deny the suppression motion on the ground that the seizure did not occur until the formal arrest. *Brendlin*, 551 U.S. at ___, 168 L. Ed. 2d at 143-44, 127 S. Ct. at 2410.

In the present case, the initial stop was lawful, because the officer had probable cause to stop the car that he observed making an illegal left turn. Unlike Brendlin, who was a passenger in a car stopped without probable cause, defendant in the present case was lawfully seized. The issues presented in this case involve the remainder of the encounter: when a person is lawfully seized, but the police lack individualized reasonable suspicion, may the officer request that the person provide identification and then use that information to conduct a warrant check?

## The Warrant Check

The State argues that "a straightforward application of *Illinois v. Caballes*" dictates that this court must adopt the position held by the dissenters in *Harris I*–that when an officer knows a passenger's identity, either from previous contact with the individual or after having lawfully requested identification from the passenger, "a warrant check, without more, does not somehow change the 'fundamental nature of the stop.' " *Harris I*, 207 Ill. 2d at 537 (Fitzgerald, J., dissenting, joined by Thomas and Garman, JJ.). Thus, the State argues, a warrant check need not be related to the purpose of the stop or supported by reasonable, articulable suspicion of criminal conduct by the passenger. See *Harris I*, 207 Ill. 2d at 539 (Fitzgerald, J., dissenting, joined by Thomas and Garman, JJ.).

The State correctly notes that a warrant is a matter of public record and, therefore, the subject of the warrant has no expectation of privacy in the information contained therein. See *Gist v. Macon County Sheriff's Department*, 284 Ill. App. 3d 367, 377 (1996) (dismissing plaintiff's defamation action against publishers of "Crime Stoppers" flyer that accurately published information available in public records).

The State then suggests an analogy between the existence of a warrant and an individual's status as a registered sex offender, citing this court's decision in *People v. Cornelius*, 213 Ill. 2d 178 (2004) (statutorily mandated registration as a sex offender creates a public record; dissemination of that record via the Internet does not violate any constitutional right of the registered individual).

Finally, the State relies on the decision of the appellate court in *People v. Roberson*, 367 Ill. App. 3d 193 (2006), a post-*Caballes* decision involving a warrant check on a vehicle passenger during a lawful traffic stop. Roberson was the driver of a car stopped for a traffic violation. The officer asked both Roberson and his passenger for their names, which they provided. A warrant check revealed an outstanding arrest warrant for the passenger, whom the officer then arrested. When a search of the car incident to the arrest of the passenger revealed contraband, the officer also arrested Roberson. The trial court, relying on this court's opinion in *Harris I*, granted Roberson's motion to suppress. The appellate court, however, noted that *Harris I* had subsequently been vacated by the Supreme Court. The appellate court further concluded that *Caballes* requires the opposite result. *Roberson*, 367 Ill. App. 3d at 201. Because the warrant check neither unreasonably prolonged the duration of the traffic stop nor infringed upon the passenger's legitimate interest in privacy, it did not violate the fourth amendment. The evidence discovered in the car was, therefore, admissible against both the driver and the passenger. *Roberson*, 367 Ill. App. 3d at 201.

Defendant makes no argument on the issue of the warrant check.

The appellate court, on remand for reconsideration in light of *Caballes*, found no guidance whatsoever in that opinion. Instead, the appellate court distinguished the present case from *Caballes* on several bases: this case does not involve a dog sniff; defendant was the passenger, not the driver, of the stopped vehicle; and defendant raises no claims under the Illinois Constitution.

Subsequently, in *People v. Andrews*, 372 Ill. App. 3d 960, 962-63 (2007), the appellate court applied the analytical framework of *People v. Gonzalez*, 204 Ill. 2d 220 (2003), to conclude that a warrant check of a passenger whose identity was known to the officer was outside the scope of the stop. Because the warrant check "could well have lengthened the duration of the detention if the officer had to wait for

-9-

the results of the check," the court held that the warrant check "changed the fundamental nature of the traffic stop," converting it "into an inquiry into defendant's past misconduct." *Andrews*, 372 Ill. App. 3d at 963. The court further concluded that this result was consistent with the Supreme Court's decision in *Caballes* because the case did not involve a dog sniff and because the defendant was not the driver of the stopped vehicle. *Andrews*, 372 Ill. App. 3d at 963.

The dissenting justice noted the absence of evidence to support an allegation that the warrant search prolonged the duration of the traffic stop. *Andrews*, 372 Ill. App. 3d at 965 (Schmidt, J., dissenting). In addition, the dissenting justice would have found the warrant check permissible under *Caballes*. *Andrews*, 372 Ill. App. 3d at 964 (Schmidt, J., dissenting).

The appellate court is correct that the specific issue in *Caballes* was "[w]hether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop." *Caballes*, 543 U.S. at 407, 160 L. Ed. 2d at 846, 125 S. Ct. at 837. The appellate court, however, in both *Harris II* and *Andrews*, overlooked the obvious analogy between a dog sniff and a warrant check.

By vacating this court's judgment in *Harris I* and remanding for reconsideration in light of *Caballes*, the Supreme Court directed that an Illinois court conduct the same type of inquiry that it applied to dog sniffs to determine whether a warrant check performed during a concededly lawful traffic stop compromises a constitutionally protected interest by revealing legitimately private information. See *Caballes*, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837. For the reasons that follow, we reverse the appellate court's judgment in the present case and overrule its judgment in *Andrews*.

Caballes was seized when the car he was driving was stopped for speeding. Defendant was seized when the car in which he was riding was stopped after making an illegal left turn. Both stops were based on probable cause. In each case, the occupants of the vehicle were lawfully seized. See *Brendlin*, 551 U.S. at ___, 168 L. Ed. 2d at 139-40, 127 S. Ct. at 2407.

Nevertheless, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably

infringes interests protected by the Constitution." *Caballes*, 543 U.S. at 407, 160 L. Ed. 2d at 846, 125 S. Ct. at 837. A seizure can become unlawful, for example, "if it is prolonged beyond the time reasonably required" to complete the traffic stop. *Caballes*, 543 U.S. at 407, 160 L. Ed. 2d at 846, 125 S. Ct. at 837, citing *People v. Cox*, 202 Ill. 2d 462 (2002) (dog sniff conducted during traffic stop was impermissible because it occurred after an overly long detention of the driver).[1] Thus, the Court noted this court's conclusion that the duration of the traffic stop in *Caballes* "was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop," but observed that the seizure would have become unlawful "if the dog sniff had been conducted while [Caballes] was being unlawfully detained." *Caballes*, 543 U.S. at 408, 160 L. Ed. 2d at 846-47, 125 S. Ct. at 837. Defendant has not argued that the computerized warrant check, conducted at the same time as the officer's check of the status of the driver's license, unreasonably prolonged his seizure.

After addressing the duration of the seizure, the Court in *Caballes* then stated that conducting a dog sniff "would not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog sniff itself infringed [the seized individual's] constitutionally protected interest in privacy." *Caballes*, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837. Similarly, unless a warrant check itself infringes upon a seized individual's constitutionally protected interest in privacy, an officer may perform a warrant check during a traffic stop, so long as it does not unreasonably prolong the duration of the stop.

With respect to the seized individual's privacy interests, the Court concluded in *Caballes* that because a dog sniff can reveal only the possession of contraband, it does not compromise any legitimate interest in privacy and is not a search subject to the fourth amendment. *Caballes*, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837. The Court compared the dog sniff, which does not reveal any legitimately private information, to the use of a thermal-imaging

---

[1]Although *Cox* is still "good law" for this limited proposition, this court subsequently overruled *Cox* in part in *People v. Bew*, No. 104084 (March 20, 2008).

device to detect the presence of marijuana plants in a home. *Caballes*, 543 U.S. at 409, 160 L. Ed. 2d at 847-48, 125 S. Ct. at 838, citing *Kyllo v. United States*, 533 U.S. 27, 150 L. Ed. 2d 94, 121 S. Ct. 2038 (2001). In *Kyllo*, the Court found that the warrantless use of the device constituted an unlawful search because it was capable of revealing lawful activity in which the occupants of the home had a privacy interest. *Kyllo*, 533 U.S. at 38, 150 L. Ed. 2d at 104-05, 121 S. Ct. at 2045. In contrast, "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Caballes*, 543 U.S. at 410, 160 L. Ed. 2d at 848, 125 S. Ct. at 838.

As noted above, a warrant is a matter of public record. An individual has no reasonable expectation of privacy in the fact that a court has entered a written order commanding his arrest. 725 ILCS 5/107–1 (West 2002). A warrant check does not implicate legitimate privacy interests because, like a dog sniff, it does not reveal any legitimately private activity or information, or result in any physical contact with the individual or his property. See *Caballes*, 543 U.S. at 409-10, 160 L. Ed. 2d at 848, 125 S. Ct. at 838.

We, therefore, conclude that this court's treatment of the warrant-check issue in *Harris I* is inconsistent with the Supreme Court's analysis in *Caballes*. We hold that a warrant check on the occupants of a lawfully stopped vehicle does not violate fourth amendment rights, so long as the duration of the stop is not unnecessarily prolonged for the purpose of conducting the check and the stop is "otherwise executed in a reasonable manner" (*Caballes*, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837).

Applying this rule to the facts of the present case, we find, first, that the seizure of defendant was initially lawful; second, the seizure was of reasonable duration; and, third, the warrant check did not infringe upon a constitutionally protected privacy interest. Thus, the warrant check did not violate defendant's right under the fourth amendment to be free from unreasonable search and seizure. Therefore, unless the officer's request for identification was improper,

the evidence discovered as a result of the warrant check and subsequent arrest was properly admitted at trial.[2]

## Continued Vitality of *Gonzalez*

In *Gonzalez*, this court concluded that a traffic stop is analogous to a *Terry* investigatory stop and, therefore, the reasonableness of police conduct during a traffic stop may be judged by reference to *Terry*'s "dual inquiry." *Gonzalez*, 204 Ill. 2d at 226-28, citing *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The two prongs of this inquiry are: (1) whether the stop was justified at its inception and (2) whether the officer's actions during the course of the stop were reasonably related in scope to the circumstances that initially justified the stop. *Gonzalez*, 204 Ill. 2d at 228. This court then further defined the scope inquiry, determining that the allowable scope of a stop could be exceeded either by impermissibly prolonging the detention or by fundamentally altering the nature of the stop. *Gonzalez*, 204 Ill. 2d at 235.

Gonzalez was a passenger in a vehicle that was subject to a lawful traffic stop. Thus, in *Gonzalez*, this court adopted the *Terry*-based inquiry not only with respect to the fourth amendment rights of drivers, but also with respect to the rights of passengers.

The State argues that this court's decision in *Gonzalez* was implicitly overruled by the Supreme Court's decision in *Caballes*. We must resolve this question before addressing the request for identification issue because our analysis of the issue in *Harris I* was guided by the *Gonzalez* framework.

The State asserts three bases for finding that *Gonzalez* has been overruled. The first two are closely related: first, if application of *Caballes* leads to a result different on the warrant-check issue from that this court reached in *Harris I* by applying the *Gonzalez* framework, then *Gonzalez* must have been implicitly overruled by *Caballes*; and second, Justice Ginsburg's dissent in *Caballes* acknowledges that the Court rejected the application of *Terry*

---

[2]We do not consider whether the officer's request for identification should be analyzed in the same manner as a dog sniff or a warrant check because the State has not argued that *Caballes* is applicable to this issue.

principles to police conduct during a traffic stop. The State's final argument is that *Gonzalez* was wrong when it was decided because *Terry* principles are not applicable to a traffic stop based on probable cause.

*Caballes* establishes two principles governing the analysis of police conduct during a traffic stop. First, a seizure that is lawful at its inception can become unlawful "if it is prolonged beyond the time reasonably required" to complete the purpose of the stop. *Caballes*, 543 U.S. at 407, 160 L. Ed. 2d at 846, 125 S. Ct. at 837. Second, so long as the traffic stop is "otherwise executed in a reasonable manner," police conduct does "not change the character" of the stop unless the conduct itself infringes upon the seized individual's "constitutionally protected interest in privacy." *Caballes*, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837.

What we have come to call the "scope" prong of the *Gonzalez* inquiry contains two parts–whether the duration of the stop was impermissibly prolonged and whether the police conduct altered the fundamental nature of the stop. *Gonzalez*, 204 Ill. 2d at 235. The duration prong clearly survives *Caballes*. *Caballes*, 543 U.S. at 407, 160 L. Ed. 2d at 846, 125 S. Ct. at 837.

The continued vitality of the "alteration of the fundamental nature of the stop" prong is in question. *Caballes* may be read as holding that only conduct that infringes upon a constitutionally protected privacy interest impermissibly changes the character of the stop. Indeed, Justice Ginsburg, in her dissent, argued that the majority erred by considering only the duration of the seizure and abandoning any consideration of the manner in which the stop was conducted. *Caballes*, 543 U.S. at 421, 160 L. Ed. 2d at 855, 125 S. Ct. at 845. (Ginsburg, J., dissenting, joined by Souter, J.).

On the other hand, the Court stated in *Caballes* that conducting a dog sniff "would not change the character of a traffic stop that is lawful at its inception *and* otherwise executed in a reasonable manner, *unless* the dog sniff itself infringed [the seized individual's] constitutionally protected interest in privacy." (Emphasis added.) *Caballes*, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837. Another reading of *Caballes* might be that the phrase "and otherwise executed in a reasonable manner" (*Caballes*, 543 U.S. at 408, 160 L.

Ed. 2d at 847, 125 S. Ct. at 837), preserves some role for the second "fundamental nature of the stop" prong of the *Terry/Gonzalez* inquiry.

We need not resolve this question, however, by careful parsing of the language of *Caballes*, because *Gonzalez* is unequivocally overruled by the Supreme Court's subsequent decision in *Muehler v. Mena*, 544 U.S. 93, 161 L. Ed. 2d 299, 125 S. Ct. 1464 (2005).

*Muehler* involved the detention and questioning of the occupants of a house at which the police executed a search warrant. The police had reason to believe that a gang member who had been involved in a drive-by shooting was residing in the house. The warrant authorized a search of the premises for deadly weapons and evidence of gang membership. An Immigration and Naturalization Service (INS) officer accompanied the police officers. The occupants of the house were handcuffed and detained while the warrant was being executed, pursuant to *Michigan v. Summers*, 452 U.S. 692, 69 L. Ed. 2d 340, 101 S. Ct. 2587 (1981) (officers executing a search warrant for contraband may detain the occupants of the premises while the search is being conducted). During this period of detention, the INS officer asked Iris Mena for her name, date of birth, place of birth, and immigration status. He also asked for documentation of her immigration status. Mena's papers confirmed that she was a permanent resident of this country. *Muehler*, 544 U.S. at 96, 161 L. Ed. 2d at 305, 125 S. Ct. at 1468.

Mena subsequently filed a section 1983 lawsuit (42 U.S.C. §1983) against the officers, alleging violations of her rights under the fourth amendment based on (1) the use of handcuffs and (2) the INS officer's questioning her about her immigration status in the absence of reasonable suspicion of wrongdoing on her part. The jury awarded actual and punitive damages and the Court of Appeals affirmed on both counts. *Mena v. City of Simi Valley*, 332 F.3d 1255 (9th Cir. 2003).

The United States Supreme Court reversed. For our purposes, only the Court's resolution of the second claim is relevant. The Court noted its repeated prior holding that " 'mere police questioning does not constitute a seizure.' " *Muehler*, 544 U.S. at 100, 161 L. Ed. 2d at 308, 125 S. Ct. at 1471, quoting *Bostick*, 501 U.S. at 434, 115 L. Ed. 2d at 398, 111 S. Ct. at 2386. Court quoted *Bostick* further, stating that:

" '[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage.' " *Muehler*, 544 U.S. at 100, 161 L. Ed. 2d at 308-09, 125 S. Ct. at 1471, quoting *Bostick*, 501 U.S. at 434-35, 115 L. Ed. 2d at 398, 111 S. Ct. at 2386.

Applying this rule to Mena, the Court concluded that because her detention was not prolonged by the questioning, "there was no additional seizure within the meaning of the Fourth Amendment." Thus, the officer "did not need reasonable suspicion to ask Mena for her name, date and place of birth, or immigration status." *Muehler*, 544 U.S. at 101, 161 L. Ed. 2d at 309, 125 S. Ct. at 1471.

The Court then referred to its recent decision in *Caballes*, noting, first, its holding in that case that a dog sniff is not a search subject to the fourth amendment and, second, its rejection of the notion that a dog sniff, which need not be justified by reasonable suspicion, causes a "shift in purpose" that converts a lawful traffic stop into a drug investigation. *Muehler*, 544 U.S. at 101, 161 L. Ed. 2d at 309, 125 S. Ct. at 1471, citing *Caballes*, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837.

Applying these principles to Mena, the Court concluded that her detention was lawful at the time the immigration officer questioned her regarding her immigration status (there having been no finding that the duration was unduly prolonged), and that "no additional Fourth Amendment justification" for the inquiry was required. *Muehler*, 544 U.S. at 101, 161 L. Ed. 2d at 309, 125 S. Ct. at 1471-72.

Similarly, the dog sniff performed during Caballes' traffic stop did not cause an additional seizure or implicate constitutionally protected privacy interests, and, therefore, no additional justification in the form of reasonable suspicion was required. *Caballes*, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837.

In light of *Muehler*, it becomes clear that *Caballes* rejected reasoning that led to this court's adoption of the "fundamental alteration of the nature of the stop" portion of the "scope" prong of *Gonzalez*. All that remains is the duration prong. During a lawful seizure, as occurred in both *Muehler* and *Caballes*, the police may ask

questions unrelated to the original detention and are not required to form an independent reasonable suspicion of criminal activity before doing so. Further, the Court's reliance on *Bostick* in *Muehler* indicates that the encounter should be analyzed under *Bostick*, even when the person being questioned has already been seized. *Muehler*, 544 U.S. at 101, 161 L. Ed. 2d at 309, 125 S. Ct. at 1471 (mere questioning of a seized individual does not constitute an "additional seizure within the meaning of the Fourth Amendment").

Finally, we note that the applicability of *Muehler*, which did not involve a traffic stop, to the facts of the present case, which does involve a traffic stop, cannot be questioned. First, *Muehler* itself relied on *Caballes*–a traffic stop case–thus illustrating that the principles being applied are relevant without regard to the factual basis for the encounter between the police and the individual.

Second, numerous federal and state courts have concluded that *Muehler* is applicable to both drivers and passengers who are seized during a lawful traffic stop. See, *e.g.*, *United States v. Soriano-Jarquin*, 492 F.3d 495 (4th Cir. 2007); *United States v. Olivera-Mendez*, 484 F.3d 505 (8th Cir. 2007); *United States v. Mendez*, 476 F.3d 1077 (9th Cir. 2007); *United States v. Stewart*, 473 F.3d 1265 (10th Cir. 2007); *United States v. Hernandez*, 418 F.3d 1206 (11th Cir. 2005); *United States v. Singh*, 415 F.3d 288 (2d Cir. 2005); *Salmeron v. State*, 280 Ga. 735, 632 S.E.2d 645 (2006); *State v. Baxter*, 144 Idaho 672, 168 P.3d 1019 (App. 2007); *Marinaro v. State*, 163 P.3d 833 (Wyo. 2007). Indeed, our own appellate court has reached this same conclusion. *People v. Starnes*, 374 Ill. App. 3d 329 (2007); *People v. Ramsey*, 362 Ill. App. 3d 610 (2005).

Third, the parallels between a lawful traffic stop and the execution of a search warrant are clear. Both are based on probable cause. The occupants of the vehicle and the occupants of the premises covered by the warrant are lawfully seized for the duration of the stop or warrant search, so long as the duration is not unreasonably prolonged. *Brendlin*, 551 U.S. at ___, 168 L. Ed. 2d at 138-39, 127 S. Ct. at 2406; *Summers*, 452 U.S. at 705, 69 L. Ed. 2d at 351, 101 S. Ct. at 2595. The same principles that permit the questioning of Mena regarding her immigration status without the requirement of individualized reasonable suspicion permit an officer to request the passenger in a stopped vehicle to provide identification.

We, therefore, overrule *Gonzalez* to the extent that it holds that the reasonableness of a traffic stop must be judged not only by its duration, but by the additional criterion of whether the actions of the officer alter the fundamental nature of the stop.[3]

The duration prong of the inquiry predates our decision in *Gonzalez* and has been reaffirmed in both *Caballes* and *Muehler*. It, therefore, survives as the sole focus of the scope inquiry. See *Gonzalez*, 204 Ill. 2d at 230, citing *United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir. 1993) (rejecting premise that questioning by a police officer that is unrelated to the purpose of a traffic stop is itself a fourth amendment violation).

Request for Identification

As noted above, the warrant check was possible only because the officer learned defendant's name when he presented a state identification card in response to the officer's request for identification. Thus, if the manner in which he obtained this information was improper, the motion to suppress should have been granted.

In *Harris I*, this court was unanimous in its conclusion that the officer's request for identification did not violate defendant's rights under the fourth amendment. The majority applied the *Terry*-based analysis of *Gonzalez*, which we have now overruled, to determine that "the traffic stop was justified at its inception," and that the officer's

---

[3]This court has employed the *Gonzalez* framework in two subsequent decisions. In *Bunch*, we found that the officer's questioning of the defendant "prolonged defendant's detention beyond the completion of the purpose of the stop." *Bunch*, 207 Ill. 2d at 17. Therefore, the overruling of *Gonzalez* does not undermine the result in *Bunch*.

In *People v. Moss*, 217 Ill. 2d 511, 528 (2005), we concluded that the officer impermissibly expanded the purpose of the stop in violation of the scope prong of *Gonzalez* when he requested permission to search the defendant's truck. The defendant, however, was serving a period of mandatory supervised release. Thus, while the request to search was not "reasonably related to the purpose of the traffic stop," it was reasonable in light of defendant's status. *Moss*, therefore, is unaffected by our overruling of *Gonzalez*.

-18-

request that the defendant/passenger identify himself was "facially innocuous." *Harris I*, 207 Ill. 2d at 525, citing *Gonzalez*, 204 Ill. 2d at 236. The majority reasoned that:

> "Such a request gave the officer the opportunity to identify a potential witness to the traffic violation and to the officer's actions during the course of the stop, providing a certain level of protection to both the officer and the driver of the vehicle. Moreover, the request for identification, in and of itself, did not change the fundamental nature of the stop by converting it into a general inquisition about past, present and future wrongdoing." *Harris I*, 207 Ill. 2d at 525.

The dissenting justices agreed that the officer's request for identification was lawful. *Harris I*, 207 Ill. 2d at 537 (Fitzgerald, J., dissenting, joined by Thomas and Garman, JJ.).

We note that the State has failed to present an argument on this issue, except to say that this court's conclusion in *Harris I* was unanimous and correct. The State fails to appreciate that when we agreed with its assertion that *Gonzalez* has been overruled by the Supreme Court, it became necessary to analyze this issue under some framework other than the abandoned *Gonzalez* approach.

Defendant acknowledges that he was lawfully detained for the duration of the traffic stop, which was not unreasonably prolonged. See *Caballes*, 543 U.S. at 407, 160 L. Ed. 2d at 846, 125 S. Ct. at 837 (a seizure can become unlawful "if it is prolonged beyond the time reasonably required" to complete the traffic stop). He does not suggest that the stop was not "otherwise executed in a reasonable manner." *Caballes*, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837. He argues, instead, that when the officer asked him for identification, he was not free to leave and he reasonably believed that compliance with the officer's request was required. His argument is, in effect, that the appellate court's original analysis of the request-for-identification issue under the principles enunciated by the United States Supreme Court in *Bostick* was and continues to be correct.[4]

---

[4]The appellate court, on remand, found "no basis for changing our original decision in this case." *Harris II*, No. 3–00–0190 (unpublished order under Supreme Court Rule 23).

The Supreme Court cited *Bostick* in *Muehler*, but because Mena did not argue that her response to the INS officer's questions was involuntary, the Court did not conduct a *Bostick* analysis. Defendant argues that the officer's request for identification violated his fourth amendment rights because his compliance was not voluntary, we must therefore address that question.

The general principles of *Bostick* can be summarized as follows: For purposes of the fourth amendment, an individual is "seized" when an officer " 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen.' " *Bostick*, 501 U.S. at 434, 115 L. Ed. 2d at 398, 111 S. Ct. at 2386 (1991), quoting *Terry*, 392 U.S. at 19 n.16, 20 L. Ed. 2d at 905 n.16, 88 S. Ct. at 1879 n.16. "So long as a reasonable person would feel free 'to disregard the police and go about his business,' [citation], the encounter is consensual and no reasonable suspicion is required." *Bostick*, 501 U.S. at 434, 115 L. Ed. 2d at 398, 111 S. Ct. at 2386, quoting *California v. Hodari D.*, 499 U.S. 621, 628, 113 L. Ed. 2d 690, 698, 111 S. Ct. 1547, 1552 (1991). If, however, when " 'all the circumstances surrounding the incident' " (*Immigration & Naturalization Service v. Delgado*, 466 U.S. 210, 215, 80 L. Ed. 2d 247, 255, 104 S. Ct. 1758, 1762 (1984), quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980)) are taken into account, the conduct of the police would lead a reasonable innocent person under identical circumstances to believe that he or she was not "free to decline the officers' requests or otherwise terminate the encounter" (*Bostick*, 501 U.S. at 436, 115 L. Ed. 2d at 400, 111 S. Ct. at 2387), that person is seized. Accordingly, the analysis hinges on an objective evaluation of the police conduct and not upon the subjective perception of the individual approached. *Hodari D.*, 499 U.S. at 628, 113 L. Ed. 2d at 698, 111 S. Ct. at 1551.

The appellate court noted the "flashing emergency lights" of the squad car, the impending arrest of the driver, and the fact that the officer did not explain to defendant why he was asking to see his identification. The totality of these circumstances, the appellate court concluded, rendered defendant's compliance involuntary. *Harris I*, 325 Ill. App. 3d at 266.

-20-

In *People v. Luedemann*, 222 Ill. 2d 530, 555 (2006), this court observed that the question is not whether the individual "practically and realistically" felt free to decline the officer's request. Rather, the court must conduct an objective assessment of police conduct to determine if the defendant's compliance was obtained through physical force or show of authority. This test "presupposes a reasonable *innocent* person." (Emphasis in original.) *Luedemann*, 222 Ill. 2d at 551. "The analysis requires an objective evaluation of the police conduct in question and does not hinge upon the subjective perception of the person involved." *Luedemann*, 222 Ill. 2d at 551.

The fact that defendant was seized at the time the officer requested his identification is certainly relevant to this inquiry. When the individual approached and questioned by a police officer is a passenger who has already been seized incidental to a traffic stop (*Brendlin*, 551 U.S. at ___, 168 L. Ed. 2d at 138-39, 127 S. Ct. at 2406), or a person who is detained while a search is conducted pursuant to a warrant (*Summers*, 452 U.S. at 705, 69 L. Ed. 2d at 351, 101 S. Ct. at 2595), the individual is not free to terminate the encounter. The proper inquiry under *Bostick*, therefore, is whether the individual was free to decline the officer's request. The specific question in the present case is whether an innocent person in defendant's circumstances would have felt free to decline to produce his identification for the officer.

We conclude that defendant was free to decline the officer's request for identification notwithstanding the fact that he was not free to terminate the encounter. A reasonable innocent passenger in defendant's situation, even upon realizing that the driver of the car in which he has been riding is about to be arrested, would feel free to decline to provide his driver's license or other identification. Being involved in a traffic stop is not quite as stressful or upsetting for the passenger as it is for the driver. As this court has noted, in a portion of *Gonzalez* that does not conflict with the Supreme Court's decision in *Muehler*, a request for identification is facially innocuous: "It does not suggest official interrogation and is not the type of question or request that would increase the confrontational nature of the encounter." *Gonzalez*, 204 Ill. 2d at 236. An innocent passenger has nothing to fear and no reason to feel intimidated or threatened. He might even ask why the police officer needs the information. If the

officer explains that he may let the passenger drive the vehicle, he may choose that option or decline. If he declines, the officer may not insist that he comply. See, *e.g.*, *Bautista v. State of Florida*, 902 So. 2d 312, 313 (Fla. App. 2005) (after arrest of driver during lawful traffic stop, passenger responded to officer's request for identification by saying that he did not have any identification with him; in the absence of reasonable suspicion, the officer's subsequent demand that passenger remove his wallet from his pocket was improper).

We conclude that the request for defendant's identification was permissible under *Muehler* and that his compliance was voluntary under *Bostick*, and, thus, did not violate defendant's fourth amendment rights.

## CONCLUSION

The trial court properly denied defendant's motion to suppress. Neither the officer's request that defendant provide identification nor the subsequent warrant check using the information obtained from the defendant violated his rights under the fourth amendment. Therefore, we reverse the appellate court's judgment and affirm the judgment of the circuit court.

*Appellate court judgment reversed; circuit court judgment affirmed.*

-22-