# Illinois Official Reports

## Appellate Court

---

### *People v. Pulling*, 2015 IL App (3d) 140516

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. FRANK E. PULLING, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-14-0516 |
| Filed | June 17, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Henry County, No. 13-CF-310; the Hon. Richard A. Zimmer, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Matthew P. Schutte, State's Attorney, of Cambridge (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Larry S. Vandersnick, of Farber Law Office, of Geneseo, and Matthew Paulson, of Rock Island, for appellee. |

Panel PRESIDING JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices Carter and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1 The State appeals the trial court's order that granted defendant Frank E. Pulling's motion to suppress evidence. On appeal, the State argues that the trial court erred in finding that the traffic stop was unreasonably prolonged prior to the canine alert, and therefore, the motion to suppress should not have been granted. We affirm.

¶ 2 FACTS

¶ 3 Defendant was charged by information with unlawful possession with intent to deliver a controlled substance (720 ILCS 570/401(a)(2)(B) (West 2012)) and unlawful possession of a controlled substance (*id.*). Prior to trial, defendant filed a motion to quash arrest and suppress evidence.

¶ 4 At the hearing on defendant's motion, Illinois State Trooper Andrew Fratzke testified that on November 2, 2013, he stopped a 2013 Hyundai for speeding. Phillip Macon was driving the car and defendant was riding in the front passenger seat.

¶ 5 During Fratzke's testimony, Macon's attorney introduced the dash camera video recording of the traffic stop. Approximately one minute into the recording, Fratzke initiated the traffic stop and approached the Hyundai. Fratzke asked for the two occupants' identification cards, and one of the occupants stated that they were driving to Iowa. Macon told Fratzke that his driver's license was suspended due to unpaid child support. Thereafter, Fratzke returned to his patrol car and ran various background and records checks. Approximately four minutes into the stop, Fratzke had all of the information needed to prepare the citations. Fratzke stated that it generally took him between three and five minutes to write a speeding ticket, but this stop would be longer because he also prepared a citation for driving on a suspended driver's license.

¶ 6 After six minutes, Fratzke reapproached the Hyundai and asked Macon to accompany him to the patrol car to complete some paperwork. At the time, Fratzke did not notice anything unusual about Macon, defendant, or the contents of the Hyundai. Inside the patrol car, Fratzke asked Macon several questions. Macon explained that defendant was his "godbrother," and they were driving to Sioux City, Iowa, because his cousin, Tony Brown, had been killed.

¶ 7 Approximately eight minutes into the stop, Fratzke exited the patrol car and approached defendant, who was still sitting in the Hyundai. Defendant stated that he was not driving because he was ill. Defendant also said that he and Macon were going to his aunt's funeral in Sioux City. Fratzke testified that Macon and defendant's inconsistent stories raised his suspicion of criminal activity, and Fratzke returned to his patrol car and confronted Macon about the discrepancies. Macon maintained that he and defendant were going to a funeral for his cousin, Brown. In an effort to verify Macon's story, Fratzke used Google to search the Internet for information on Brown's death. Fratzke stated that he had stopped preparing the traffic citations while he conducted the Google search. Fratzke was unable to locate

information on Brown's death, and Macon stated that he did not understand why news of Brown's death was not in the newspapers. Fratzke told Macon that he was going to walk his canine around the Hyundai, and Macon stated that he had two bags in the car and defendant did not have any. Fratzke thought it was suspicious that someone was going to a funeral without a change of clothes.

¶ 8 After 13 minutes, Fratzke went back to the Hyundai to speak with defendant. Defendant said that he and Macon were going to stay with Tony, a close acquaintance. Fratzke told defendant to exit the Hyundai while he conducted a free-air sniff. Defendant got out of the car, and Fratzke noticed that defendant was sweating and hyperventilating. Fratzke concluded that defendant was unable to drive and offered to call an ambulance. Defendant declined the ambulance and stated that he was having problems with his blood pressure and was "real cold." Defendant said that he had no problem with Fratzke searching the car, and he had some luggage in the vehicle.

¶ 9 After 16 minutes, Fratzke began the free-air sniff on the driver's side of the car. Approximately, 45 seconds later, Fratzke concluded the sniff on the passenger side of the car. Fratzke testified that the canine alerted near the passenger door. Fratzke then searched the Hyundai and found suspected crack cocaine in the trunk. Thereafter, he placed Macon and defendant under arrest.

¶ 10 At the conclusion of the hearing, the trial court ruled that the stop was not unduly prolonged and denied defendant's motion to suppress. Defendant filed a motion to reconsider and, after a hearing on the motion, the trial court granted defendant's motion to suppress evidence. The State appeals.

¶ 11            ANALYSIS

¶ 12 The State argues that the trial court erred in finding that the traffic stop was unreasonably prolonged prior to the canine alert. After reviewing the video recording of the stop and trial testimony, we conclude that the trial court did not err in granting defendant's motion to suppress evidence.

¶ 13 We review the trial court's ruling on a motion to suppress evidence under a two-part test. *People v. Harris*, 228 Ill. 2d 222, 230 (2008). The trial court's factual findings are entitled to deference and will be reversed only if they are against the manifest weight of the evidence. *Id*. The ultimate ruling of whether reasonable suspicion or probable cause exists and whether suppression is warranted is reviewed *de novo*. *Id*.

¶ 14 The federal and state constitutions protect citizens from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Stopping a vehicle and detaining its occupants constitutes a seizure. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Harris*, 228 Ill. 2d at 231. However, traffic stops are less like formal arrests, and more like investigative detentions. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). As a result, the reasonableness of a traffic stop is measured by the standard in *Terry v. Ohio*, 392 U.S. 1 (1968). Under *Terry*, an officer may briefly detain and question a person if the officer reasonably believes that person has committed, or is about to commit, a crime. *Id.* at 21-22; see also 725 ILCS 5/107-14 (West 2012). "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). An initially lawful seizure can violate the fourth amendment if it is "prolonged beyond the time reasonably

required to complete" the purpose of the stop. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); see also *Harris*, 228 Ill. 2d at 235. "Mere hunches and unparticularized suspicions are not enough to justify a broadening of the stop into an investigatory detention." *People v. Ruffin*, 315 Ill. App. 3d 744, 748 (2000). A routine traffic stop may not be used as a subterfuge to obtain other evidence based on an officer's suspicion. *People v. Koutsakis*, 272 Ill. App. 3d 159, 164 (1995).

¶ 15    Here, Fratzke unlawfully prolonged the duration of the stop when he interrupted his traffic citation preparation to conduct a free-air sniff based on an unparticularized suspicion of criminal activity. Fratzke testified that approximately four minutes into the stop, he had all the information necessary to prepare the citations for speeding and driving on a suspended driver's license. However, Fratzke stopped writing the citations when he noticed inconsistencies in the stories recited by Macon and defendant and conducted a free-air sniff. Fratzke's deviation from the purpose of the stop to conduct a drug investigation was not supported by independent reasonable suspicion, and therefore, it unlawfully prolonged the duration of the stop.

¶ 16    Recently, in *Rodriguez v. United States*, 575 U.S. ___, 135 S. Ct. 1609 (2015), the Supreme Court reviewed the issue of whether a police officer may extend an otherwise completed traffic stop to conduct a dog sniff. A Nebraska police officer stopped a vehicle driven by Denny Rodriguez for a possible lane violation. The officer asked for Rodriguez's driver's license, registration, and proof of insurance, and asked Rodriguez to accompany him to the patrol car. Rodriguez refused and the officer returned to his patrol car and conducted a records check. Thereafter, the officer reapproached the vehicle and requested the passenger's identification. The passenger complied, and the officer ran a records check on the passenger and wrote a warning ticket. The officer returned to Rodriguez's vehicle a third time to issue the warning ticket and return the occupants' documents. However, the officer did not consider Rodriguez "free to leave" and requested permission to conduct a free-air sniff. (Internal quotation marks omitted.) *Id*. at ___, 135 S. Ct. at 1613. Rodriguez said no, and the officer instructed Rodriguez to exit the vehicle. Rodriguez complied, and the officer conducted the free-air sniff. The canine alerted to the presence of drugs, and a search of the vehicle revealed a large bag of methamphetamine.

¶ 17    In analyzing the case, the Supreme Court noted that a lawful seizure for a traffic violation "remains lawful only 'so long as [unrelated] inquiries do not measurably extend the duration of the stop.' " *Id*. at ___, 135 S. Ct. at 1615 (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)). However, an officer may conduct certain unrelated checks during an otherwise lawful traffic stop, so long as he does so in a way that does not prolong the stop. *Id*. at ___, 135 S. Ct. at 1615. The unrelated checks include: checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Id*. at ___, 135 S. Ct. at 1615. The Supreme Court noted that "[t]hese checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id*. at ___, 135 S. Ct. at 1615. In contrast, a dog sniff is aimed at detecting evidence of criminal wrongdoing and is not an ordinary incident of a traffic stop. *Id*. at ___, 135 S. Ct. at 1615. The Court held that a traffic stop exceeding the time needed to handle the matter for which the stop was made violates the constitution's shield against unreasonable seizures. *Id*. at ___, 135 S. Ct. at 1612.

¶ 18    The State argues that the stop in the instant case was approximately 15 minutes in length and, although Fratzke was not preparing the citations during this period, it was not unduly

prolonged because the length would have been similar if Fratzke had been preparing the speeding and driving on a suspended driver's license citations. However, it is of little consequence that the overall length was similar to a stop where two traffic citations are issued because the record established that the stop was lengthened by the free-air sniff, a task unrelated to the reason for the stop. If Fratzke had completed the tickets prior to or after the free-air sniff, the stop still would have been prolonged by this unrelated investigation that was not supported by independent reasonable suspicion.

¶ 19 We are cognizant of the fact that the instant case differs factually with *Rodriguez* in that the free-air sniff occurred before the traffic stop had ended. However, this positional difference of the point at which the sniff occurs has no impact on our ruling. In *Rodriguez*, the Supreme Court stated that "[t]he critical question *** is not whether the dog sniff occurs before or after the officer issues a ticket *** but whether conducting the sniff 'prolongs' *i.e.*, adds time to 'the stop.' " *Id*. at ___, 135 S. Ct. at 1616. There is no dispute that the dog sniff added time to the total duration of the stop at issue. Moreover, the additional time was to conduct a check that was unrelated to this otherwise lawful traffic stop. See *id*. at ___, 135 S. Ct. at 1616. Consequently, we conclude that the free-air sniff prolonged the traffic stop and affirm the trial court's ruling on defendant's motion to suppress evidence.

¶ 20 Tangentially, we note that although defendant gave Fratzke consent to search the vehicle, defendant's consent did not transform this prolonged stop into a permissible seizure.[1] Defendant's consent was acquired after Fratzke had explained to Macon and defendant that he was going to conduct a free-air sniff. Neither Macon nor defendant consented to the sniff, which was conducted before the vehicle search. As a result, the stop was prolonged before Fratzke could invoke defendant's consent to justify the search of the vehicle.

¶ 21                                              CONCLUSION
¶ 22 The judgment of the circuit court of Henry County is affirmed.

¶ 23 Affirmed.

---

[1]The State does not argue that the motion to suppress should have been denied on consent grounds, and therefore, has forfeited this argument.