**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250214-U

Order filed June 22, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0214 Circuit No. 24-DT-599 |
| JERMAIN CERVANTES, | ) ) ) | Honorable Colette Safford, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE BERTANI delivered the judgment of the court.
Presiding Justice Hettel and Justice Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: The officer had probable cause to arrest defendant for driving while under the influence of alcohol.

¶ 2    The State appeals from the Will County circuit court's granting of the motion to suppress evidence filed by defendant, Jermain Cervantes, arguing that the evidence presented at the motion to suppress hearing established that the officer had probable cause to arrest defendant. We reverse and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4          On July 6, 2024, defendant was arrested for driving while under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2024)). Defendant moved to quash the arrest and suppress all evidence obtained as a result, arguing that the officer lacked probable cause to arrest him. At a hearing on the motion on April 22, 2025, the following evidence was presented.

¶ 5          Deputy Ryal Albin had been employed with the Will County Sheriff's Office since 2015 and had been in the traffic division since 2017. He completed DUI training at the police academy, received advanced training in DUI detection, and attended the Advanced Roadside Impaired Driving Enforcement course which taught standardized field sobriety testing.

¶ 6          On July 6, 2024, at approximately 2:31 a.m., Albin was in an unmarked squad car near Route 53 in Wilmington. Albin witnessed defendant's vehicle drive over the white shoulder line before a curve in the road and while "negotiating" the curve. Dash camera video footage from Albin's squad car showed defendant's vehicle cross the white shoulder line on a straight stretch of road, cross the line again while negotiating a curve in the road, and then touch the line twice after the curve. Albin activated his lights and initiated a stop. Defendant pulled over.

¶ 7          Albin detected the odor of an alcoholic beverage and observed defendant had bloodshot, glassy eyes. Defendant was not slurring his speech, communicated clearly and without difficulty, and generally followed Albin's instructions. Albin found an open beer bottle in the vehicle. Defendant admitted to consuming four or five beers with friends after work at 6 p.m. Albin asked defendant if he knew what time it was. Defendant responded, "No, I understand." Albin again asked defendant if he knew what time it was and defendant responded, "Yeah." When Albin asked again what time it was, defendant responded, "I don't know the exact time because I just drove off." Albin asked defendant to guess, and defendant answered 11 p.m. or 12 a.m.

¶ 8    Albin administered three standardized field sobriety tests: the horizontal gaze nystagmus (HGN), the walk and turn, and the one-leg stand. He explained that the decision point is the threshold of clues indicating alcohol consumption. For the HGN test, there are three clues for each eye, including a lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, and the onset of nystagmus prior to 45 degrees. The decision point for the HGN test is four out of six clues. Defendant exhibited all six clues.

¶ 9    Albin next administered the walk and turn test, which has a decision point of two out of eight clues. Defendant displayed four clues. Albin's body camera footage showed Albin instruct defendant to keep his arms at his side, take nine heel-to-toe steps, turn around by keeping his lead foot on the ground and taking small steps, and then take nine more heel-to-toe steps without stopping. Defendant took nine steps while failing to touch his heel to his toe on every step. After nine steps, defendant stopped and appeared to seek clarification by making a gesture with his hand and waiting. Albin told defendant to continue just as he was instructed. Defendant turned around by first moving his lead foot, taking a large step with his back foot, and then pivoting. During the next nine steps, defendant used his arms to balance and failed to touch his heel to his toe on every step.

¶ 10    Albin next administered the one-leg stand test, which has a decision point of two out of four clues. Defendant displayed two clues. He raised his arms for balance and put his foot down after approximately 17 seconds. Albin asked defendant several times to submit to a preliminary breath test. Defendant responded that he was not refusing but was nervous because of the presence of other officers. Albin placed defendant under arrest for DUI.

¶ 11        The court granted defendant's motion, holding that defendant made a *prima facie* showing that the arrest was unsupported by probable cause and the State failed to put forward evidence to show the arrest was legally justified. In discussing the evidence, the court stated:

> "So what do you look at when you want to judge the reasonableness under the probable cause. You can look at the observations of the defendant. You certainly can also look to the standardized field sobriety tests.
>
> Well, we look at the video, and you see [defendant], and my notes indicate for the HGN you're standing. You're not swaying. You're easily able to communicate with the deputy.
>
> Same situation when you're doing the walk and turn test. You're able to do that without issue.
>
> And then again the same with the one-leg stand. You're able to hold up your leg and count out without issue.
>
> So when you look at all of those things is that enough to support a DUI arrest. Meaning that the officer believes, has to have enough information, enough evidence, not just a suspicion based off you telling them how much you had to drink. More than a suspicion. They have to be able to articulate or have some information to be able to say that as a result of drinking any amount of alcohol that your mental or physical faculties were so impaired to reduce your ability to safely operate a motor vehicle with ordinary care. And I don't think we have that here in terms of the arrest for the DUI."

The State filed a certificate of substantial impairment and appealed.

¶ 12                                    II. ANALYSIS

4

¶ 13    The State argues on appeal that the court erred in finding defendant established a *prima facie* case and ultimately granting defendant's motion to suppress. We apply a two-part standard in reviewing a circuit court's ruling on a motion to suppress. *People v. Harris*, 228 Ill. 2d 222, 230 (2008). The court's factual findings are accepted unless they are manifestly erroneous. *Id.* Whether the motion to suppress was properly granted is reviewed *de novo*. *Id.*

¶ 14    Where an officer lacks probable cause to arrest, defendant is entitled to have his arrest quashed and the resulting evidence suppressed. *People v. O'Brien*, 227 Ill. App. 3d 302, 307 (1992). To determine whether probable cause existed, "the trial court must determine whether a reasonable and prudent person, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense." *People v. Fortney*, 297 Ill. App. 3d 79, 87 (1998). This standard requires the officer to have more than a mere suspicion but need not rise to a level of evidence sufficient to convict. *People v. Fonner*, 385 Ill. App. 3d 531, 540 (2008). This determination is a practical, commonsense decision that requires consideration of the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Moreover, probable cause in a DUI setting requires that there be sufficient evidence to allow the officer to objectively and reasonably believe that as a result of the consumption of any amount of alcohol a subject's mental or physical faculties are so impaired that it reduces his or her ability to think or act with ordinary care. *People v. Bostelman,* 325 Ill. App. 3d 22, 34 (2001) (citing the definition of under the influence of alcohol, Illinois Pattern Jury Instructions, Criminal, 23.29).

¶ 15    Here, we conclude that Albin had probable cause to believe defendant committed a DUI. Albin's testimony and video evidence established that defendant's vehicle crossed the shoulder line twice before swaying within the lane and touching the line two more times. Both shoulder line departures were significant and not *de minimis*. Defendant's eyes were bloodshot and glassy. Albin

smelled the odor of an alcoholic beverage when he first encountered defendant and found an empty beer bottle in defendant's vehicle. Defendant stated he had consumed four or five beers and misstated the time by over two hours. Defendant displayed sufficient clues during all three field sobriety tests to indicate impairment. During the walk and turn test, defendant failed to follow the instructions, expressed confusion during the turn, and used his arms for balance. Defendant also used his arms to balance during the one-leg stand test and put his foot down early. He further refused to submit to the preliminary breath test, evincing a consciousness of guilt. See *People v. Nicolosi*, 2019 IL App (3d) 180642, ¶ 21.

¶ 16        Taking a commonsense approach and considering the totality of the circumstances, the record demonstrates that Albin had more than a mere suspicion that defendant committed a DUI. Even though defendant was not swaying, did not slur his speech, and did not have difficulty communicating with Albin, the other indicators sufficiently established probable cause to believe defendant committed a DUI. Notably, even though the video evidence showed defendant's impaired driving, the court did not discuss that evidence when rendering its decision. The court erred in granting the motion to suppress.

¶ 17        In coming to our conclusion, we note that defendant argues that evidence of the field sobriety tests were not admissible because the State failed to provide the proper foundation. However, defendant never challenged the admissibility of the tests in the circuit court, forfeiting the issue. See *People v. Rigsby*, 383 Ill. App. 3d 818, 823 (2008). The circuit court considered the tests in rendering its decision and so shall we. We further reject defendant's reliance on *People v. Day*, 2016 IL App (3d) 150852, ¶ 29, and *People v. Motzko*, 2017 IL App (3d) 160154, ¶¶ 25-26, each which involved unreliable field sobriety tests, and in *Motzko*, credibility issues with the arresting officer. Here, there is nothing in the record to indicate relevant factors in this case that

6

were absent from *Day* and *Motzko*, including the presence of an empty beer bottle in defendant's vehicle, defendant's belief that it was 11 p.m. or 12 a.m. even though it was after 2:30 a.m., and, most notably, the fact that the arresting officer witnessed defendant's impaired driving.

¶ 18                                    III. CONCLUSION

¶ 19            The judgment of the circuit court of Will County is reversed and remanded.

¶ 20            Reversed and remanded.