# Illinois Official Reports

## Appellate Court

*People v. Abdur-Rahim*, 2014 IL App (3d) 130558

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ABDULLAH ABDUR-RAHIM, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-13-0558 |
| Filed | August 20, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for unlawful possession of cannabis with intent to deliver was reversed outright where his motion to suppress the cannabis discovered following an alert by a drug dog should have been granted and the evidence necessary to sustain defendant's conviction should have been suppressed, since defendant was stopped on an interstate highway by a trooper who observed two minor traffic violations, the trooper only had a "suspicion of the odor of cannabis" when he approached defendant's vehicle, the stop was prolonged when the trooper learned through the initial driver's license inquiry that defendant was on the terrorist watch list, and the backup trooper who arrived on the scene testified that he smelled a masking agent but he did not testify that he smelled cannabis or that the masking agent was a sign of contraband and, therefore, after the warning tickets for the traffic violations were completed and the issue of defendant's presence on the terrorist watch list was resolved, the stop should have ended due to the absence of any reasonable suspicion that defendant had cannabis. |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 12-CF-30; the Hon. H. Chris Ryan, Judge, presiding. |
| Judgment | Reversed. |

Counsel on Appeal          Matthew J. Mueller (argued), of Cortina, Mueller & Frobish, P.C., of Morris, for appellant.

Brian Towne, State's Attorney, of Ottawa (Justin A. Nicolosi (argued), of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel          JUSTICE LYTTON delivered the judgment of the court, with opinion. Justices McDade and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant, Abdullah Abdur-Rahim, was charged with unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(g) (West 2012)). Prior to trial, defendant filed a motion to quash his arrest and suppress evidence, arguing that the 50-minute detention after the initial stop was an unlawful extension of the stop. He also filed a motion to suppress his statements, claiming that the statements he made during the detention should be suppressed because he was not given proper *Miranda* notice. The trial court conducted separate hearings and denied the motions. Following a jury trial, defendant was found guilty and sentenced to seven years in prison. On appeal, he contends that the trial court erred in denying both of his pretrial motions. We reverse.

¶ 2    At the hearing on the motion to suppress defendant's statements, Trooper John Morscheiser testified that he was on patrol around 1 p.m. on January 16, 2012, on Interstate 80. He observed a Toyota Tundra following a vehicle too closely and crossing the yellow line. Morscheiser executed a traffic stop and approached the passenger side of the vehicle. He identified defendant as the driver and advised him of the traffic violations. About 20 or 30 minutes later, Morscheiser returned to defendant's truck and asked defendant to step out of the vehicle. Trooper Ken Patterson was also present as the backup trooper, but he was not near Morscheiser or the Tundra when Morscheiser asked defendant to step out of the vehicle.

¶ 3    Morscheiser escorted defendant to the back of the truck and engaged in a conversation with him. The conversation took place between the truck and the squad car and was recorded on the squad car's dashboard camera. At that point, defendant had not been informed that he was under arrest or that he was being otherwise investigated. Morscheiser advised defendant that he smelled cannabis in the vehicle upon his initial approach, and he asked defendant to explain why he smelled cannabis. Defendant told Morscheiser that there was probably an odor of cannabis on his clothes. He also admitted that he had a "bowl" (a device commonly used for smoking marijuana) in the center console.

¶ 4    On cross-examination, Morscheiser testified that when he initially approached defendant's vehicle, he asked defendant for his driver's license. During the 30 minutes between the initial stop and when Morscheiser returned to defendant's truck, Morscheiser finished writing the warning tickets. When he approached defendant's truck, Morscheiser had defendant's driver's

license, but he did not give defendant the tickets or his driver's license before asking him to step out of the vehicle.

¶ 5    On redirect, Morscheiser testified that after he conducted the initial driver's license inquiry, dispatch notified him that defendant was on the terrorist watch list. He stated that it took him a long time to complete the written warnings due to the unusual circumstances. Morscheiser had to complete several comparison checks to verify that defendant was the same person whose name appeared on the watch list. He had the district dispatch center working to verify defendant's identification. He also had to make the appropriate phone calls and provide information about the subject.

¶ 6    The trial court denied defendant's motion to suppress statements. The court noted that the length of the stop was "getting a little long" but concluded that it was not so unreasonable that it transformed into a custodial situation. The court added that "[defendant] might feel that he was in custody. But on the other hand, given the *Mendenhall* factors, I don't think he was. I can't find that based on an objective view."

¶ 7    A subsequent hearing was held on defendant's motion to quash his arrest and suppress evidence. Trooper Morscheiser again testified that he pulled defendant over on January 16, 2012, for driving too closely to another vehicle and crossing the yellow line. He approached the passenger side of the vehicle. After a brief conversation, defendant gave Morscheiser his driver's license, which Morscheiser took back to his squad car. Morscheiser testified that when he initially approached defendant's vehicle, he had a "suspicion of the odor of cannabis." He later testified that he was unsure about the odor because of the way the wind was blowing and he decided to give defendant "the benefit of the doubt originally because it was a faint odor." Morscheiser stated that he wanted to talk to defendant about the odor at some point, but there were other things going on that delayed the conversation.

¶ 8    Within minutes after the initial stop, Trooper Patterson arrived on the scene. He approached the truck, spoke with defendant, and then went back to the squad car and talked to Morscheiser. Patterson then returned to defendant's vehicle and had another conversation with defendant. Morscheiser testified that he did not mention marijuana to defendant during the initial 30 minutes of the stop but that Patterson did. Morscheiser stated that he "probably" told Patterson he was going to question defendant about the cannabis.

¶ 9    Morscheiser further testified that he issued warning tickets for the two traffic violations he observed, but he did not give defendant the tickets prior to having him exit the vehicle. Morscheiser stated that defendant was not free to leave at that point because he still had defendant's driver's license. He testified that he was not arresting defendant at the conclusion of the initial 30 minutes; he was still investigating. Morscheiser called for the drug dog before he asked defendant to exit the vehicle.

¶ 10    As he stated in the hearing on the motion to suppress defendant's statements, Morscheiser testified that the reason for the delay in the stop was due to the terrorist watch list investigation. After verifying defendant was the person listed, Morscheiser was informed that there were no pending warrants for defendant's arrest. Dispatch also had to call a terrorist screening center. Morscheiser did not inform defendant that he was on the watch list. In light of statements defendant made once he was outside the vehicle, Morscheiser searched the vehicle.

¶ 11    On cross-examination by the State, Morscheiser stated that he was familiar with the smell of burnt and raw cannabis based on his nine years of training in drug interdiction. On his first approach to defendant's vehicle, he smelled the faint odor of raw cannabis. He admitted that a

background check normally takes only a few minutes. However, Morscheiser had been involved in another stop that required a terrorist watch list check, and that background check took a while. According to Morscheiser's testimony, the majority of the 30-minute wait was due to the terrorist watch list investigation.

¶ 12　　Prior to the dog arriving, Morscheiser searched the truck and found a smoking device and a tobacco package with raw cannabis inside. The dog alerted to the presence of drugs at the back of the vehicle. The troopers pried open the tailgate and found four duffel bags containing marijuana.

¶ 13　　Patterson testified that he had been employed as an Illinois State Police trooper for five years. He reported to the scene after Morscheiser made the traffic stop and the terrorist watch list was mentioned. He was there within five minutes. Patterson approached defendant's vehicle, but he did not smell marijuana; he smelled a masking agent. He testified that it smelled like it was a freshly sprayed deodorant. Patterson had two conversations with defendant during the initial 30-minute period. During those conversations, defendant denied having cannabis in his vehicle.

¶ 14　　The trial court then viewed the videotape of the stop. It shows Morscheiser initiating a traffic stop of defendant's vehicle from the point of view of the dashboard of the squad car. Morscheiser exits his vehicle and approaches the passenger side of defendant's truck at minute mark 1:06. After briefly talking to defendant, Morscheiser walks back to his car, holding several documents. He contacts dispatch and spells defendant's last name. He then says, "When I was up there talking to him I thought I could smell an odor of burnt cannabis, not raw cannabis. I'm not certain the way the wind was blowing and stuff. I'm not going to call him out on that, and I am going to question him about it at some point. I am not going to use that as probable cause to search the vehicle. I'm not 100% sure about that." He also mentions a backup officer at the scene.

¶ 15　　At minute mark 7:21, dispatch mentions a possible terrorist organization member. At minute 8:30, Trooper Patterson can be seen approaching the passenger side of defendant's vehicle. A few minutes later, Morscheiser asks dispatch if they are going to call the "866 number." Patterson then tells Morscheiser that defendant has a new snowboard and helmet in the backseat of his truck and says he spent the night in Iowa. Morscheiser informs Patterson that he thought he could smell the odor of burnt cannabis but that he is not "100% sure." Patterson says that it "smells like Vick's Vapor Rub all over the car."

¶ 16　　At minute 12:04, Morscheiser indicates that he is going to call for a dog because they are going to have to call the 866 number and they will have time. Patterson once again approaches the truck and has another conversation with defendant. The troopers discuss the paperwork and defendant's terrorist watch list status. Morscheiser tells Patterson to let defendant know that the computer is running slow. At minute 20:47, Patterson reapproaches defendant's vehicle and has another conversation with defendant. At 25:55 on the tape, dispatch indicates that defendant is a "Code 3" and that is the lowest priority. At that point, Morscheiser says that they should wait for the dog and that if the dog alerts that would give him a reason to get into the locked bed. Morscheiser gives dispatch defendant's license number and address at minute 29.

¶ 17　　At minute mark 32:20, Morscheiser approaches defendant's vehicle and asks defendant to "step out for a second." Morscheiser escorts defendant around to the back of the truck and asks him to take his hands out of his pockets. He asks defendant if he has anything in his pockets and defendant shows him that he only has some cash. Morscheiser says that when he

approached the vehicle it smelled like marijuana and asks defendant if he smokes marijuana. Defendant indicates that he does not. Morscheiser says, "Like in the last couple of days?" Defendant says it might be on his clothes. Morscheiser then tells defendant that he is going to have a dog walk around the truck and if the dog alerts, he will search the vehicle. Defendant admits that he has a "little bowl" in the car. Morscheiser places defendant in the back of the squad car and begins to search the passenger compartment of the truck.

¶ 18 At minute 52:49, the canine arrives and alerts to narcotics near the tailgate of the truck. From his squad car, Morscheiser asks if that is a positive alert. He then exits the car. Morscheiser, Patterson and another trooper drop the tailgate and pull out a duffel bag.

¶ 19 The trial court denied defendant's motion to quash and suppress. The court noted that this was "a unique set of circumstances" because of the terrorist watch list. It concluded that a faint odor was problematic but found that the additional conversations with Patterson provided probable cause to search.

¶ 20 Defendant filed a motion to reconsider the denial of the motion to quash and suppress. At the hearing, Morscheiser testified that he became aware that defendant was on the terrorist watch list through dispatch. Counsel then handed Morscheiser a computer-generated page of defendant's criminal history. Morscheiser testified that it was similar to the information he would have received on his computer and read the following statement from that page:

> "Contact terrorist screening center at 866-872-9001 during this encounter. If this would extend the scope or the duration of the encounter, contact the TSC immediately thereafter. If you are a border patrol Trooper, immediately call the NTC. Attempt to obtain sufficient identifying information during the encounter without otherwise extending the scope or duration of the encounter."

He testified that the information may have appeared on his computer screen, but he could not remember. The trial court found that Morscheiser's testimony did not indicate that he responded inappropriately or in an untimely manner and denied the motion to reconsider.

¶ 21 At trial, the parties stipulated that the recovered substance was cannabis and weighed a total of 5,505 grams. Defendant testified that he had gone to Keystone, Colorado, to go snowboarding and was going from Colorado back home to Massachusetts at the time he was stopped. When he was in Colorado, he stayed with a friend named Mark. Before defendant left, Mark asked defendant if he could throw a few things in the back of his truck. He said he would be in Boston in a few days and would pick the items up then. Defendant threw Mark the keys. Mark went out, came back inside, and gave defendant his keys. Defendant admitted that he smoked marijuana with Mark before he left. On his way back home, defendant realized that he no longer had the key for the back of the truck.

¶ 22 A jury found defendant guilty. The trial court sentenced him to seven years in prison and imposed a $55,000 street value fine.

## ANALYSIS

¶ 24 Defendant first claims that the trial court erred in denying his motion to quash and suppress. He argues that Morscheiser impermissibly prolonged the stop beyond the time to complete the warning tickets and that the troopers lacked a separate fourth amendment justification for the search.

¶ 25     We review the trial court's ruling on a motion to suppress evidence under a two-part test. *People v. Harris*, 228 Ill. 2d 222, 230 (2008). The trial court's factual findings are entitled to deference and will be reversed only if they are against the manifest weight of the evidence. *Id*. The ultimate ruling of whether reasonable suspicion or probable cause exists and whether suppression is warranted are questions of law reviewed *de novo*. *Id*.

¶ 26     Our federal and state constitutions protect citizens from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. In general, stopping a vehicle and detaining its occupants constitutes a seizure. *Brendlin v. California*, 551 U.S. 249, 255 (2007). A trooper is justified in stopping and briefly detaining a driver if he or she observes the driver commit a traffic offense. *People v. Wofford*, 2012 IL App (5th) 100138, ¶ 22.

¶ 27     A seizure that is lawful at its inception may become unlawful under the fourth amendment if (1) the duration of the stop is unreasonably prolonged, or (2) the officer's actions during the stop independently trigger the fourth amendment. *Illinois v. Caballes*, 543 U.S. 405, 407-08 (2005). An investigative stop that is lawful at its inception must cease once reasonable suspicion dissipates, unless there is a separate fourth amendment justification to prolong the stop. *People v. Baldwin*, 388 Ill. App. 3d 1028, 1033 (2009). "Mere hunches and unparticularized suspicions are not enough to justify a broadening of the stop into an investigatory detention." *People v. Ruffin*, 315 Ill. App. 3d 744, 748 (2000). A routine traffic stop may not be used as a subterfuge to obtain other evidence based on an officer's suspicion. *People v. Koutsakis*, 272 Ill. App. 3d 159, 164 (1995).

¶ 28     Where a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person had committed an offense, reliance on that information justifies a stop to check identification, to pose questions to the person or to detain the person briefly while attempting to obtain further information. *United States v. Hensley*, 469 U.S. 221, 232 (1985); see also *People v. Ewing*, 377 Ill. App. 3d 585, 593-94 (2007) (*Hensley* principles apply to communications sent through dispatch). Evidence recovered during the course of a bulletin stop is admissible if the stop is not significantly more intrusive than would have been permitted by the issuing department. *Hensley*, 469 U.S. at 233.

¶ 29     Here, Trooper Morscheiser stopped defendant for following too closely and improper lane usage. When he returned to his squad car, he received information that defendant was on a terrorist watch list. The record establishes that Morscheiser waited for approximately 23 minutes before dispatch reported back to him regarding defendant's watch list status. As Morscheiser completed the written warning tickets, the State Police dispatcher informed him that defendant was a low priority suspect. Trooper Morscheiser did not testify that he was still investigating the watch list issue when he returned to defendant's vehicle. Instead, he stated that he had finished writing both warning tickets when he asked defendant to step out of the truck 30 minutes into the stop. Yet, the stop lasted an additional 22 minutes. It seems clear that the troopers prolonged the stop in an effort to obtain incriminating information from defendant. See *Koutsakis*, 272 Ill. App. 3d at 164.

¶ 30     With the warning tickets completed and the watch list issue resolved, the troopers needed an independent reason to lawfully extend the duration of the stop. The State maintains that the smell of burnt cannabis provided reasonable articulable suspicion to extend the stop. While the smell of burnt cannabis may be sufficient in some cases, in this case the arresting officer failed to supply the articulable facts necessary to support a fourth amendment intrusion. At the motion to suppress hearing, Trooper Morscheiser testified that he thought he smelled burnt

cannabis, but he was not sure. His statements on the videotape of the stop were consistent with his vague statements at trial. On the videotape, Morscheiser told the dispatcher and Patterson that he thought he smelled an odor of burnt cannabis but was uncertain because of the way the wind was blowing. These facts support only a hunch or suspicion of illegal activity. They do not give rise to a reasonable and articulable suspicion that defendant was trafficking cannabis. Thus, the continued detention of defendant was a violation of his constitutional rights.

¶ 31    The State argues that Morscheiser's testimony, coupled with Patterson's statement that he smelled a masking agent, provided reasonable suspicion to prolong the detention. We disagree. Although Patterson testified that he smelled the strong odor of a masking agent when he first approached the vehicle, he did not testify that he smelled the odor of cannabis or that the masking agent was a sign of contraband. When Patterson approached the truck a second time and asked defendant if he had marijuana, defendant stated that he did not. At that point, any reasonable suspicion that may have been generated by Morscheiser's uncertain smell dissipated. Thus, beyond the delay pursuant to the terrorist watch list issue, the troopers did not have an independent articulable suspicion to prolong the stop.

¶ 32                                          CONCLUSION
¶ 33    Defendant's motion to quash his arrest and suppress evidence should have been granted. Our holding renders the motion to suppress statements issue raised in defendant's brief moot. Because the State will be unable to prevail without the recovered evidence, we reverse defendant's conviction outright. See *People v. Blair*, 321 Ill. App. 3d 373, 380-81 (2001). The judgment of the circuit court of La Salle County is reversed.

¶ 34        Reversed.