NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190554-U

NO. 4-19-0554

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 7, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| RAYMOND BURROUGHS, | ) | No. 18CF321 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

_____

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed, concluding (1) defendant's claims related to the
allegedly prolonged traffic stop and subsequent search of his person are better
suited to a collateral proceeding; (2) defendant forfeited a challenge to the chain
of custody by stipulating to a forensic report indicating the pipe recovered from
his person tested positive for methamphetamine, and defendant failed to
demonstrate ineffective assistance of counsel; and (3) defendant forfeited his
claim that the trial court misinterpreted the Veterans and Servicemembers Court
Treatment Act.

¶ 2   In October 2018, the State charged defendant, Raymond Burroughs, with

unlawful possession of methamphetamine (720 ILCS 646/60(a) (West 2018)) and unlawful

possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2018)).  Following a May 2019

bench trial, the trial court found defendant guilty of both charges.  The court sentenced defendant

to 24 months' probation and 180 days in jail, stayed pending compliance with probation.

¶ 3        Defendant appeals, arguing (1) he was deprived of the effective assistance of counsel where his trial attorney failed to file a meritorious motion to suppress, (2) the trial court abused its discretion in admitting a forensic chemist's report into evidence absent proof the police took reasonable protective measures to ensure the pipe tested was the pipe removed from the traffic stop, and (3) the trial court violated the Veterans and Servicemembers Court Treatment Act (Veterans Court Act) (730 ILCS 167/1 *et seq.* (West 2018)) when it improperly considered defendant's county of residence.  For the following reasons, we affirm.

¶ 4                                    I. BACKGROUND

¶ 5        In October 2018, Chris Edwards, an officer with the Fairbury Police Department, initiated a traffic stop of a vehicle driven by a person later identified as defendant after observing the vehicle driving 55 miles per hour in a 40-mile-per-hour zone.  Following the traffic stop, the State charged defendant with unlawful possession of methamphetamine (720 ILCS 646/60(a) (West 2018)) and unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2018)).  Defendant was also issued traffic citations for failing to provide proof of insurance and speeding.

¶ 6                                    A. Bench Trial

¶ 7        In May 2019, the matter proceeded to a bench trial where the trial court heard the following evidence.

¶ 8                                    1. *Chris Edwards*

¶ 9        Officer Edwards testified that, in October 2018, he initiated a traffic stop of a vehicle driven by defendant.  According to Edwards, he was stationary in his vehicle running his radar unit when he clocked defendant driving 55 miles per hour in a 40-mile-per-hour zone.  During the stop, Edwards asked defendant for proof of insurance, which defendant never produced.  Edwards testified he gave defendant some time to look for his insurance information,

but the only document defendant found was "a payment schedule or communications from an insurance company." According to Edwards, defendant had a passenger, Tina Velazquez, in his vehicle.

¶ 10    Edwards indicated defendant's vehicle was searched following a free-air sniff where a canine alerted to the vehicle. Prior to the free-air sniff, Edwards asked defendant to exit the vehicle. Edwards searched defendant and testified, "Initially found a hitter pipe with cannabis residue in one pocket. As I began to search the other pocket, an item fell out and hit my boot and subsequently the pavement." Edwards testified the unknown item was recovered later in the traffic stop and turned out to be a pipe with methamphetamine residue.

¶ 11    Edwards testified the pipe was recovered into evidence and sent to the Illinois State Police for testing. According to Edwards, defendant was arrested and taken to county jail. During his transport to the county jail, defendant made a statement that, had Edwards not been so clumsy, he would have caught defendant with the pipe. Edwards acknowledged the pipe was eventually located at Velazquez's feet, about two or three feet from where defendant was searched.

¶ 12                                    2. *Stipulation*

¶ 13    At the beginning of the second day of the bench trial, the following exchange occurred:

"THE COURT: All right. And also [defendant] is present

with Mr. Bertram. So Mr. Regnier?

MR. REGNIER [(ASSISTANT STATE'S ATTORNEY)]:

Yes, Judge. People's Exhibit 1 I'd seek to enter, it's a lab report

- 3 -

regarding the pipe that was testified about containing methamphetamine.

THE COURT: Okay.

MR. REGNIER: But there's a stipulation. I would seek to admit that.

THE COURT: Any objection to admission of People's 1?

MR. BERTRAM [(DEFENSE ATTORNEY)]: No, Judge.

THE COURT: All right. I'll show People's 1 admitted showing that the pipe tested positive for, residue on the pipe has tested positive for methamphetamine."

¶ 14                                 3. *Cody Followell*

¶ 15        Officer Followell testified that, in October 2018, he responded to the scene of a traffic stop with his drug-sniffing dog. Followell testified he walked Velazquez to the side of the squad car prior to conducting the free-air sniff. According to Followell, there was no pipe on the ground initially, but later a pipe was located near Velazquez. Followell testified he was right behind Velazquez and he did not hear or see her drop anything to the ground at her feet. Followell acknowledged he initially thought the pipe fell out of Velazquez's coat.

¶ 16                                 4. *Defense Evidence*

¶ 17        Defendant sought to admit a portion of the video of the traffic stop into evidence. There was some confusion as to which portion of the video counsel was going to play. Defense counsel stated he wished to admit an eight-minute-long clip of the video. Counsel specified, "Visually what you'll see is my client being taken out of the vehicle and taken towards the squad

[car]." Counsel stated the end of the clip was "when Officer Followell finds the pipe" at "30 minutes and 46 seconds."

¶ 18      The video recording of the traffic stop showed Officer Edwards pulling out and following behind the speeding vehicle. Approximately 2½ minutes into the video, Edwards initiated the traffic stop and made contact with defendant. Edwards explained he stopped defendant for speeding and requested the usual information from defendant and identification from Velazquez. Defendant could not find proof of insurance, and Edwards remained at the vehicle while defendant searched for his insurance card. At approximately nine minutes into the video, Edwards confirmed the vehicle's registration information with dispatch from his squad car. Edwards remained in his squad car for approximately four additional minutes while defendant searched for his insurance information.

¶ 19      Edwards returned to defendant's vehicle, and defendant was unable to produce proof of insurance. Approximately 14 minutes into the video, Edwards returned to his squad car. Edwards showed his radar to the dashcam indicating defendant was clocked driving 55 miles per hour. Approximately 23 minutes into the video, Edwards returned to defendant's vehicle, and a second officer can be seen approaching. Edwards said, "let me go ahead and finish this up," as he looked over at the approaching officer. Edwards directed defendant to exit his vehicle and stand in front of his car. Officer Followell then led his canine around defendant's vehicle and conducted a free-air sniff. The canine alerted on the vehicle approximately 26 minutes into the video.

¶ 20      Edwards began searching defendant, while Followell asked Velazquez to step out of defendant's vehicle. Edwards removed a hitter pipe from defendant's right coat pocket and an

unknown object from defendant's left coat pocket that he dropped on the ground. Edwards was unable to immediately locate the dropped item and continued searching defendant's coat.

¶ 21          Followell searched Velazquez and had her remove any items in her pockets and her outer layers of clothing. During the search, Followell found a pipe on the ground, which Edwards placed on the hood of his squad car. Edwards conducted an extensive search of defendant's vehicle and found no additional contraband. Edwards discussed who the pipe belonged to with other officers on the scene, and Followell indicated he first observed the pipe after removing Velazquez's coat.

¶ 22                              B. Guilty Finding and Sentencing

¶ 23          The trial court specifically credited Edwards's account of removing an object from defendant's coat pocket and dropping it. The court noted Edwards's testimony was corroborated by the video, which showed Edwards dropping something and immediately searching for the object on the ground. The court found the State proved the pipe was located in an area consistent with where it could have fallen moments after Edwards dropped the object. Finally, the court stated nothing on the video indicated Velazquez may have dropped an object. The court concluded the State met its burden of proof on both charges and the traffic citations.

¶ 24          In July 2019, the trial court sentenced defendant to 24 months' probation and 180 days in jail, stayed pending compliance with probation. While discussing its sentencing rationale, the court stated, "perhaps you would have qualified for Veteran's Court if you lived in this community, this circuit; but you don't so you don't qualify for Veteran's Court."

¶ 25          This appeal followed.

¶ 26                              II. ANALYSIS

¶ 27        On appeal, defendant argues (1) he was deprived of the effective assistance of counsel where his trial attorney failed to file a meritorious motion to suppress, (2) the trial court abused its discretion in admitting a forensic chemist's report into evidence absent proof the police took reasonable protective measures to ensure the pipe tested was the pipe removed from the traffic stop, and (3) the trial court violated the Veterans Court Act when it improperly took into account defendant's county of residence.

¶ 28                                A. Ineffective Assistance of Counsel

¶ 29        Defendant first argues he was deprived of the effective assistance of counsel where his trial attorney failed to file a meritorious motion to suppress evidence seized after Edwards illegally prolonged the length of the traffic stop beyond the time necessary to complete the mission of the stop and searched defendant without probable cause. The State argues (1) defendant forfeited this issue by failing to raise it before the trial court, (2) the issue is more appropriately raised in a postconviction petition where a factual record on the reasonableness of the stop can be made, and (3) alternatively, defendant failed to demonstrate ineffective assistance of counsel because the unargued suppression motion was meritless.

¶ 30        A claim of ineffective assistance of counsel is governed by the familiar framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767. The deficient-performance prong requires a defendant to show that counsel's performance was objectively unreasonable under prevailing professional norms. *People v. Veach*, 2017 IL 120649, ¶ 30, 89 N.E.3d 366. The prejudice prong requires a showing that, but for counsel's deficient performance, the outcome of the proceeding would have

- 7 -

been different.  *Id.*  A defendant must satisfy both prongs to prevail on a claim of ineffective assistance of counsel.  *Id.*

¶ 31                                        1. *Prolonged Traffic Stop*

¶ 32        The fourth amendment protects the rights of individuals "against unreasonable searches and seizures."  U.S. Const., amend. IV.  Reasonableness is the touchstone of fourth amendment analysis and "is measured in objective terms by examining the totality of the circumstances."  *Ohio v. Robinette*, 519 U.S. 33, 39 (1996).  Subject to specific exceptions, the fourth amendment protection against unreasonable searches and seizures requires a warrant supported by probable cause.  *People v. Sanders*, 2013 IL App (1st) 102696, ¶ 13, 986 N.E.2d 114.  "When a police officer observes a driver commit a traffic violation, the officer is justified in briefly detaining the driver to investigate the violation."  *People v. Ramsey*, 362 Ill. App. 3d 610, 614, 839 N.E.2d 1093, 1097 (2005).  A stop of a vehicle and the detention of its occupants constitute a "seizure" under the fourth amendment, even if the stop is brief and for a limited purpose.  *People v. Timmsen*, 2016 IL 118181, ¶ 9, 50 N.E.3d 1092.  To be constitutionally permissible, a vehicle stop must be reasonable under the circumstances, and the stop will be deemed reasonable " 'where the police have probable cause to believe that a traffic violation has occurred.' "  *Ramsey*, 362 Ill. App. 3d at 615 (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)).  "In determining whether a traffic stop was an unreasonable seizure, a court must consider the following questions: (1) Was the initial traffic stop lawful?  (2) Assuming the initial stop to be lawful, was the stop prolonged beyond the time necessary to complete the mission of the stop?  (3) Assuming it was so prolonged, was the continued detention of the defendant supported by reasonable suspicion?"  *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 36, 141 N.E.3d 320.

¶ 33 Here, defendant does not challenge the validity of the traffic stop at its inception. It is undisputed that Edwards clocked defendant's vehicle traveling 55 miles per hour in a 40-mile-per-hour zone. Thus, Edwards had probable cause to initiate a valid traffic stop.

¶ 34 In analyzing the conduct of police officers during a lawful traffic stop, our supreme court has looked to the United States Supreme Court's decision in *Illinois v. Caballes*, 543 U.S. 405 (2005). *People v. Harris*, 228 Ill. 2d 222, 239, 886 N.E.2d 947, 958-59 (2008).

> "First, a seizure that is lawful at its inception can become unlawful
> 'if it is prolonged beyond the time reasonably required' to
> complete the purpose of the stop. *Caballes*, 543 U.S. at 407 ***.
> Second, so long as the traffic stop is 'otherwise executed in a
> reasonable manner,' police conduct does 'not change the character'
> of the stop unless the conduct itself infringes upon the seized
> individual's 'constitutionally protected interest in privacy.'
> *Caballes*, 543 U.S. at 408 ***." *Harris*, 228 Ill. 2d at 239.

"Thus, police conduct occurring during an otherwise lawful seizure does not render the seizure unlawful unless it either unreasonably prolongs the duration of the detention or independently triggers the fourth amendment." *People v. Baldwin*, 388 Ill. App. 3d 1028, 1033, 904 N.E.2d 1193, 1198 (2009).

¶ 35 In looking at the length of the stop, no bright-line rule has been adopted to indicate when a stop has been unreasonably prolonged. *Baldwin*, 388 Ill. App. 3d at 1034. Instead, the duration of the stop must be justified by the nature of the offense and "the ordinary inquiries incident to such a stop." *Caballes*, 543 U.S. at 408; *People v. Driggers*, 222 Ill. 2d 65, 73, 853 N.E.2d 414, 419 (2006); *People v. Koutsakis*, 272 Ill. App. 3d 159, 164, 649 N.E.2d 605,

609 (1995) ("Courts must consider the purpose to be served by the stop as well as the time reasonably needed to effectuate those purposes."). "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015). "An officer may ask additional questions or have a dog sniff performed, even though those tasks are not related to the mission of the stop if they do not prolong the stop." *People v. Sadeq*, 2018 IL App (4th) 160105, ¶ 69, 138 N.E.3d 46. Courts "employ a contextual, totality of the circumstances analysis that includes consideration of the brevity of the stop and whether the police acted diligently during the stop." *Baldwin*, 388 Ill. App. 3d at 1034.

¶ 36        Here, the video recording of the traffic stop showed Edwards initiated the traffic stop and made contact with defendant approximately 2½ minutes into the video. Edwards explained he stopped defendant for speeding and requested the usual information from defendant and identification from Velazquez. Defendant could not find proof of insurance, and Edwards remained at the vehicle while defendant searched for his insurance card. Approximately 6½ minutes after Edwards initiated the stop, Edwards confirmed the vehicle's registration information with dispatch from his squad car. Edwards remained in his squad car for approximately four additional minutes while defendant searched for his insurance information.

¶ 37        Edwards returned to defendant's vehicle, and defendant was still unable to produce proof of insurance. Approximately 14 minutes into the video (and approximately 11½ minutes after initiating the stop), Edwards returned to his squad car. Edwards showed his radar to the dashcam indicating defendant was clocked driving 55 miles per hour. Almost 21 minutes after initiating the stop, Edwards returned to defendant's vehicle, and Followell can be seen

- 10 -

approaching.  Thereafter, Edwards directed defendant to step out of his vehicle while Followell conducted the free-air sniff.

¶ 38          Under these circumstances, we hold that defendant has demonstrated the motion to suppress had arguable merit and defense counsel's failure to file such a motion was unreasonable.  The video shows Edwards had all the information necessary to conclude the normal inquiries following a valid traffic stop within 10 minutes of initiating the stop.  Edwards had already gotten defendant's license and registration, confirmed the vehicle's registration, and gave defendant additional time to search for his proof of insurance.  By the time Edwards returned to his squad car approximately 11 minutes after initiating the stop, the only business left to attend to was writing traffic citations for speeding and not having proof of insurance.  The "business portion" of this stop should have reasonably concluded within 15 minutes.  Even if Edwards reasonably allowed defendant time to search for his insurance information, it did not justify the 10 additional minutes Edwards sat in his squad car after twice confirming defendant could not show proof of insurance before the canine unit arrived at the scene.  See *Baldwin*, 388 Ill. App. 3d at 1035 (finding a 14-minute stop was unreasonably prolonged when the initial purpose of the stop concluded after 4½ minutes); *People v. Ruffin*, 315 Ill. App. 3d 744, 749-50, 734 N.E.2d 507, 511 (2000) (finding a 22-minute stop was unreasonably prolonged when the business portion took only 10 minutes).

¶ 39          Although we conclude defendant has met the first prong of the *Strickland* test by demonstrating counsel's failure to file a motion to suppress was objectively unreasonable, we conclude the record is inadequate to determine whether defendant can show prejudice.  As discussed above, a motion to suppress would have had arguable merit.  However, as the State argues, the record is inadequate to determine whether such a motion would have been granted

because this issue was never raised before the trial court. *People v. Henderson*, 2013 IL 114040, ¶ 22, 989 N.E.2d 192 ("[W]here, as here, the defendant's claim of ineffectiveness is based on counsel's failure to file a suppression motion, the record will frequently be incomplete or inadequate to evaluate that claim because the record was not created for that purpose."). Specifically, the record before this court is inadequate to evaluate whether the continued detention of the defendant was supported by reasonable suspicion. *Id.* (concluding the record in that case was in fact sufficient where defense counsel had considerable leeway in her examination of the police officers and elicited the type of testimony that would have been elicited at a suppression hearing). The record in this case does not have the type of testimony that would have been elicited at a suppression hearing, particularly with respect to whether probable cause existed to justify a prolonged detention. Moreover, it is possible the State could put forth evidence showing the stop was not, in fact, unreasonably prolonged.

¶ 40 We conclude defense counsel's failure to file a motion to suppress was objectively unreasonable. We further find the record is inadequate to determine whether reasonable suspicion justified the prolonged detention. Defendant's claim of ineffective assistance of counsel is better suited to a collateral proceeding where he has the opportunity to prove the facts establishing ineffective assistance and the State has the opportunity to present evidence to the contrary.

¶ 41 2. *Probable Cause to Search Defendant*

¶ 42 Defendant next argues trial counsel was ineffective for failing to file a motion to suppress evidence where Edwards lacked probable cause to search defendant. Specifically, defendant asserts Edwards lacked probable cause to search his person because the canine alerted

to the vehicle, which he was not in, and Edwards failed to have the dog sniff defendant to support an individualized suspicion that defendant possessed a controlled substance.

¶ 43    Probable cause to search a vehicle for contraband does not automatically confer authority to conduct an incidental search of the occupants of the vehicle, even if the contraband in question is the sort that could easily be concealed on one's person. *United States v. Di Re*, 332 U.S. 581, 586-87 (1948). However, the Illinois Supreme Court has held that the odor of burning cannabis from a lawfully stopped vehicle supplied probable cause to conduct a warrantless search of the driver. *People v. Stout*, 106 Ill. 2d 77, 88, 477 N.E.2d 498, 503 (1985).

¶ 44    In *People v. Boyd*, 298 Ill. App. 3d 1118, 1127, 700 N.E.2d 444, 450 (1998), this court extended the rationale of *Stout* to include passengers. This court concluded there was no logical basis for treating the passengers differently from the driver. However, in *People v. Fondia*, 317 Ill. App. 3d 966, 970, 740 N.E.2d 839, 842-43 (2000), this court concluded that, when a canine's alert casts collective suspicion on a vehicle's occupants, the police may not abstain from gathering additional information to support probable cause to search each occupant individually. This court held that, after the canine alerted to the vehicle, the police officers should have subjected each occupant of the vehicle to an additional sniff from the canine to establish probable cause to search the occupant. *Id.*

¶ 45    The Second District Appellate Court rejected the rationale in *Fondia* and adopted the rationale from *Boyd*. *People v. Neuberger*, 2011 IL App (2d) 100379, ¶ 10, 959 N.E.2d 195. The *Neuberger* court saw no reason to depart from *Boyd*'s rationale "merely because the presence of drugs was detected via canine, rather than human, olfaction." The *Neuberger* court also rejected the rationale in *People v. Staley*, 334 Ill. App. 3d 358, 368, 778 N.E.2d 362, 370 (2002), which, as the Second District read it, "reaffirmed *Fondia*'s basic analysis, but held that a

- 13 -

dog's alert to the vehicle, standing alone, will justify searching the occupants if there is evidence that having the dog sniff the occupants individually would raise valid safety concerns." *Neuberger*, 2011 IL App (2d) 100379, ¶ 10.

¶ 46          The State invites this court to revisit its holding in *Fondia* and reconcile it with *Neuberger* and *Boyd*. However, as the State also points out, this issue was not raised before the trial court, thus depriving the State of the opportunity to present relevant evidence. The police may have refrained from conducting a canine search of defendant because of safety concerns. Or the police may have had other indicia of suspicion particular to defendant. But the failure to raise this issue before the trial court means the record is inadequate to determine whether the police had probable cause to search defendant apart from the canine alert. As discussed above, this issue should be raised in a collateral proceeding so that an adequate record may be developed for review.

¶ 47                                    B. Forensic Report

¶ 48          Defendant next asserts the trial court abused its discretion in admitting the forensic report indicating the pipe had methamphetamine residue into evidence because the State presented a deficient chain of custody for the report. Defendant acknowledges that trial counsel stipulated to the report but argues the stipulation did not extend to the chain of custody. Rather, the stipulation only covered the forensic scientist's anticipated testimony. Defendant concedes this issue was not properly preserved before the trial court and asks this court to review for plain error. Alternatively, defendant argues trial counsel was ineffective for failing to challenge the chain of custody.

¶ 49          Defendant asserts the stipulation made by trial counsel did not include the chain of custody but only extended to what the forensic scientist would have testified to at trial.

Defendant relies heavily on *People v. Woods*, 214 Ill. 2d 455, 828 N.E.2d 247 (2005). In *Woods*, the supreme court held the appellate court erred by failing to hold that the defendant waived his chain of custody challenge where the defendant stipulated to the admission of a forensic report. *Id.* at 469-70.

¶ 50 A defendant forfeits review of an issue where he or she fails to object to an alleged error that could have been raised before the trial court. *People v. Herron*, 215 Ill. 2d 167, 175, 830 N.E.2d 467, 472 (2005).

> "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410-11 (2007).

However, the plain-error doctrine does not allow for review of all forfeited errors; rather, it is a narrow and limited exception to the forfeiture rule reserved for the purpose of protecting the rights of the defendant and the integrity and reputation of the judicial process. *Herron*, 215 Ill. 2d at 177.

¶ 51 In *Woods*, the supreme court acknowledged that a challenge to the chain of custody may be properly raised for the first time on appeal if the alleged error rises to the level of

plain error. *Woods*, 214 Ill. 2d at 471. Specifically, the supreme court held that a challenge to the chain of custody could rise to the level of plain error "in those rare instances where a complete breakdown in the chain of custody occurs—*e.g.*, the inventory number or description of the recovered and tested items do not match—raising the probability that the evidence sought to be introduced at trial was not the same substance recovered from [the] defendant." *Id.* at 471-72. The supreme court noted that forfeiture of an issue "is particularly appropriate when a defendant argues that the State failed to lay the proper technical foundation for the admission of evidence, and a defendant's lack of a timely and specific objection deprives the State of the opportunity to correct any deficiency in the foundational proof at the trial level." *Id.* at 470. Further, the court rejected the argument that a challenge to the chain of custody was a sufficiency of the evidence argument and held that such an argument was an evidentiary challenge subject to the usual rules of forfeiture. *Id.*

¶ 52       Here, defendant has failed to demonstrate a complete failure in the chain of custody. The State made a *prima facie* showing that the chain of custody was sufficiently complete through Edwards's testimony that he took the pipe into evidence and delivered it to the Illinois State Police for forensic testing. Moreover, defense counsel stipulated to the forensic report indicating the pipe tested positive for methamphetamine residue. *Id.* at 468-69 ("A defendant, however, may waive the necessity of proof of chain of custody by entering into a stipulation with respect to the evidence. *** Generally speaking, a defendant is precluded from attacking or otherwise contradicting any facts to which he or she stipulated.").

¶ 53       The supreme court in *Woods* specifically noted that "by stipulating to the chemist's report and not raising the chain of custody issue at trial, defense counsel placed the State in a position of believing that the sufficiency of the chain of custody was not at issue in this

case. If [the] defendant's trial counsel had explicitly stated that he was stipulating to the chemist's report but *not* to the chain of custody, the State would have been afforded the opportunity to remedy the matter at the trial level." (Emphasis in original.) *Id.* 474-75. Here, as in *Woods*, where no issue was raised either as to the identity of the pipe with methamphetamine residue or with respect to the sufficiency of the chain of custody, it is reasonable to conclude the parties intended to remove this issue from the case and there was no dispute involving the admissibility of this evidence. Therefore, defendant "has affirmatively waived review of the chain of custody issue where he agreed to what he now seeks to challenge on appeal." *Id.* at 475. "It would be patently unfair to allow defendant to raise this challenge at such a late date for the first time on appeal." *Id.*

¶ 54　　　　　Defendant alternatively argues trial counsel was ineffective for failing to challenge the chain of custody in this case. As discussed above, "[t]o prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *Domagala*, 2013 IL 113688, ¶ 36. The deficient-performance prong requires a defendant to show that counsel's performance was objectively unreasonable under prevailing professional norms. *Veach*, 2017 IL 120649, ¶ 30. The prejudice prong requires a showing that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Id.* A defendant must satisfy both prongs to prevail on a claim of ineffective assistance of counsel. *Id.*

¶ 55　　　　　Here, the State set forth a *prima facie* case that the chain of custody was sufficiently complete. The burden then shifted to defendant to show tampering, alteration, or substitution. *People v. Echavarria*, 362 Ill. App. 3d 599, 605, 840 N.E.2d 815, 821 (2005). Where defense counsel made a tactical choice not to challenge certain evidence, we presume

counsel's choice was a matter of sound trial strategy and not ineffective assistance. Counsel may have made a strategic choice to not challenge the chain of custody so as not to unreasonably prolong the bench trial, particularly where the State could have laid a more extensive foundation for the admission of the pipe into evidence. Moreover, "[d]eficiencies in a chain of custody go to the weight and not the admissibility of evidence." *Id.*

¶ 56 We conclude defendant has failed to demonstrate counsel's performance was deficient. Moreover, as the State notes, defendant failed to produce any evidence the pipe was tampered with, altered, or substituted. Thus, defendant has failed to demonstrate a challenge to the chain of custody would have been successful or that he was prejudiced by counsel's failure to do so. Accordingly, we find defendant has forfeited this issue for review and has failed to demonstrate ineffective assistance of counsel.

¶ 57 C. Sentencing

¶ 58 Finally, defendant argues the trial court abused its discretion in sentencing defendant because it refused to consider defendant for veteran's court because defendant did not reside within the Eleventh Judicial Circuit. Defendant contends the Veterans Court Act does not condition eligibility for veteran's court based on residency and the court's comment during sentencing violated the Veterans Court Act. The State argues defendant forfeited this claim and the court's comment was not an interpretation of the Veterans Court Act but reflected its understanding of the Eleventh Judicial Circuit's policy toward veteran's court. Finally, the State contends defendant was ineligible for veteran's court because he failed to request veteran's court or otherwise indicate his willingness to participate in the program.

¶ 59 Again, a defendant forfeits review of an issue where he or she fails to object to an alleged error that could have been raised before the trial court. *Herron*, 215 Ill. 2d at 175. Here,

defendant failed to object to the trial court's comment at sentencing or preserve the issue in a post-sentencing motion. See *People v. Rathbone*, 345 Ill. App. 3d 305, 308-09, 802 N.E.2d 333, 336-37 (2003) (noting the supreme court held a defendant must file a written post-sentencing motion to preserve sentencing errors for appellate review). Moreover, defendant did not even ask to be considered for veteran's court. Had defendant raised this issue before the trial court, the Eleventh Judicial Circuit's policy regarding veteran's court could have been addressed. As the State points out, the trial court's comment appears to reflect its understanding of the circuit's policy giving effect to the Veterans Court Act. Defendant cites *People v. Paranto*, 2020 IL App (3d) 160719, ¶¶ 30-33, 146 N.E.3d 753, where the appellate court reviewed Tazewell County policy and procedure giving effect to the Drug Court Treatment Act. Unlike *Paranto*, we have no information regarding the Eleventh Judicial Circuit's policies implementing the Veterans Court Act.

¶ 60 Defendant acknowledges he forfeited this issue by failing to raise it before the trial court and asks this court to review for plain error. A reviewing court can consider forfeited issues under the plain-error doctrine when the error is clear, the evidence is closely balanced, and the error is so prejudicial as to deny defendant a fair hearing. *People v. Williams*, 313 Ill. App. 3d 849, 863, 730 N.E.2d 561, 573 (2000). The first step in plain-error analysis is to determine whether error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613, 939 N.E.2d 403, 413 (2010).

¶ 61 Here, defendant's claim is belied by the plain text of the statute. The Veterans Court Act sets forth the requirements for eligibility and provides that a defendant "shall be excluded" from a veteran's court program if "[t]he defendant does not demonstrate a willingness to participate in a treatment program." 730 ILCS 167/20(b)(2) (West 2018). Here, even if the trial court incorrectly considered defendant's county of residence, the error cannot rise to the

level of plain error because defendant failed to demonstrate a willingness to participate in a treatment program. The presentence investigation report indicated "[defendant] does not feel he has a problem with alcohol or drugs and does not feel treatment is necessary."

¶ 62 Moreover, the evidence at the sentencing hearing was not closely balanced. Defendant demonstrated no remorse for his actions, repeatedly insisted he was wrongfully convicted, and did not accept responsibility for his actions. Even so, the trial court discussed mitigating factors at length, found that a sentence of probation would not deprecate the seriousness of the offense, and sentenced defendant to 24 months' probation and 180 days in jail, stayed pending compliance with probation.

¶ 63 A trial court's sentencing decision is given substantial deference. *People v. Snyder*, 2011 IL 111382, ¶ 36, 959 N.E.2d 656. A sentence within the statutory limits will be disturbed only where the trial court abused its discretion. *People v. Flores*, 404 Ill. App. 3d 155, 157, 935 N.E.2d 1151, 1154 (2010). A sentence within the statutory range will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *People v. Crenshaw*, 2011 IL App (4th) 090908, ¶ 22, 959 N.E.2d 703.

¶ 64 The trial court's sentencing determination was within the statutory range, as probation was a permitted sentence. The court clearly considered mitigating factors, and the sentence reflected that consideration. We find the trial court did not abuse its discretion in sentencing defendant to probation and the error, if any, in considering defendant's county of residence in declining to consider a veteran's court program did not rise to the level of plain error. Accordingly, we affirm the judgment of the trial court.

¶ 65                                              III. CONCLUSION

¶ 66        For the reasons stated, we affirm the judgment of the trial court.

¶ 67        Affirmed.